Shirley MILLS, Plaintiff–Appellant,

v.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF BELVIDERE, Defendant–Appellee.

No. 95–2105.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1995.

Decided May 7, 1996.

Michael K. Havrilesko (argued), Ellen B. Lynch, Havrilesko & Associates, Rockford, IL, for plaintiff-appellant.

John L. Olson (argued), Gregory E. Barrett, Schlueter, Ecklund, Olson, Barrett & Mayfield, Rockford, IL, for defendant-appellee.

Before COFFEY, FLAUM and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Shirley Mills filed suit against her former employer, First Federal Savings and Loan Association of Belvidere ("First Federal"), alleging that her discharge from the position of Quality Control Auditor at First Federal violated the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 621 *et seq.* The district court granted summary judgment in favor of First Federal. We affirm.

## I. BACKGROUND

### A. *Factual Background*

First Federal, the defendant in this age-discrimination lawsuit, is a savings and loan association ("S & L") whose principal place of business is in Belvidere, Illinois. The parties agree that First Federal is an "employer" within the meaning of the ADEA (i.e., that it is engaged in an industry affecting commerce and has twenty or more employees). *See* 29 U.S.C. § 630(b).

The plaintiff, Shirley Mills, started as a teller at First Federal in 1970 and subsequently earned a promotion to bookkeeper. In 1985, she received a lateral transfer to the position of Quality Control Auditor. Her responsibilities in this new position included the reviewing of policies, procedures, regulations, and schedules for First Federal's auditors, overseeing the mortgage and cash accounts, and supervising branch security. Every three months, Mills was required to

submit a written report to First Federal's Audit Committee ("the Committee"), summarizing her findings in each of the aforementioned areas. The Committee was comprised of three outside directors who served on First Federal's Board of Directors: Jack Manley, Morton Silver, and Richard Winkelman.

The Audit Committee met with Mills on September 26, 1986 to discuss the quality of her reports. The gist of this meeting was later reported to the Board of Directors as follows:

The [Audit] Committee members discussed the following concerns with Shirley Mills . . .:

1. The Quality Controller's independence from Management in order to ensure the effectiveness of the Quality Control program.

2. The quality of the reporting generated by the Quality Controller to ensure the acceptability of the Quality Control procedure by the Association's independent auditors.

3. The progress in the development of the Quality Control program.

Mr. Silver stated that Shirley [Mills] was quite responsive to these concerns and that she did assure the committee that she will maintain her independence from Management, and that she will make every effort to improve her reporting to the Board, and that she will strive to implement more of the Quality Control program.

During the plaintiff's 1988 annual review, David Beasley and Steven Derr, President and Secretary–Treasurer of First Federal respectively, informed Mills that she needed to improve the substance of her reports by including more thorough explanations of governmental regulations affecting the banking industry, including, for example, those associated with the recently-enacted Competitive Equality Banking Act of 1987 ("CEBA"), Pub.L. No. 100–86, 101 Stat. 552 (codified as amended in scattered portions of 12 U.S.C.). In response to these criticisms, Mills wrote a statement of her goals for 1989, declaring

that she would attempt "[t]o develope [sic] a method of communicating with the Audit Committee to adequately explain [her] activities and findings during a month." Mills also agreed to "study the CEBA manual" and corresponding materials until she "completely underst[ood] CEBA and [could] verify [First Federal's] compliance."

During the following year (1989), however, problems with Mills' work were the subject of comment and/or discussion at no fewer than half a dozen meetings of the Audit Committee. Mills herself was present during four of these meetings and acknowledged her presence at three of them by signing the minutes.[1] On January 11, 1989, for example, the Audit Committee asked Mills to expand the content of her reports to include more detailed information concerning policies and procedures. Mills was present and signed the minutes.

The July 12, 1989 meeting of the Audit Committee, at which Mills was again present, also included a review of Mills' reports, which Committee members considered too similar in content from month to month. Although the plaintiff explained that some similarity was unavoidable because she was reviewing the same topics in each report, she was specifically asked to include her observations concerning any perceived weaknesses or shortcomings at First Federal.

On October 11, 1989, again with Mills present:

The Audit Committee reviewed and discussed the Quality Control Reports. Certain areas are reviewed every month, therefore the reports are similar but need to be enhanced. The members want to know if there are weaknesses in the Association. Different areas are being reviewed and will be appearing in the reports.

First Federal's Board of Directors held a meeting on November 14, 1989, during which three directors "questioned the clarity of Ms.

---

1. The minutes for three of the Audit Committee meetings discussed below (January 11, July 12, and October 11) bear the signatures of both the Chairman of the Audit Committee and Shirley

Mills. Although the record does not reflect who actually prepared these documents, it is certainly possible that Mills herself did so.

Mills' report on the teller shortage."[2] The Asset/Liability Committee, comprised of David Beasley, Larry Hall, Tom Montgomery, Steven Derr and Pam Palmer, also met in November of 1989 and discussed Mills' job performance. Palmer, First Federal's Comptroller, opined that the plaintiff's reports were redundant and needed to be expanded in order to inform the Audit Committee and Board of Directors in a more comprehensive manner about the S & L's compliance with federal banking regulations. Palmer also noted that she had asked Mills to submit her reports earlier in the month (so that Board members might have an opportunity to review them thoroughly before their meetings), but that in spite of this request Mills' reports were always the last Palmer received each month.

In 1988 and again in 1990, First Federal's outside auditors (KPMG Peat Marwick), recommended that the "quality control function" be "strengthen[ed]" through more comprehensive reporting and better efforts to keep current with "changes in reporting requirements and the thrift industry." These suggestions were general in nature and noted no particular weaknesses in Mills' performance.

In response to the continuing complaints about Mills' job performance and the persistent deficiencies in her reports, the Audit Committee held a special meeting on December 13, 1989, to discuss the plaintiff's future with First Federal. Mills was not present at this meeting. Committee members spoke about their displeasure with Mills' reports, and the fact that despite their instructions, she failed to make the requested improvements in her reports. At this time, as noted at the meeting, Mills' 1989 annual audit agenda was over a month late. Finally, the Committee expressed concern about Mills' ability to keep up with regulatory changes affecting the thrift industry. The members believed

that Mills would be unable to ensure First Federal's compliance with the new standards.

Desiring a stronger employee in the Quality Control position, the Committee (which had hiring and firing authority over the Quality Control Auditor position) unanimously recommended Mills' termination to the Board of Directors. The Board accepted and approved the Committee's recommendation and Beasley, President of First Federal, was instructed to inform the plaintiff of the decision. Beasley met with Mills on December 15, 1989 and notified her that her last day of work with First Federal would be January 31, 1990. Mills was 53 years old at this time and had been employed at First Federal for nearly twenty years.

The plaintiff asked for an opportunity to defend her job performance before the Audit Committee. The Committee agreed and scheduled a special meeting on December 18 for this purpose. The members explained to Mills the reasons for her termination, and Manley indicated that with the increasing demands of the Quality Control position, they questioned Mills' ability to perform the job effectively. Mills made clear that she wanted to keep working for First Federal. Manley responded that although the Committee could not guarantee her a new position at the S & L, she was free to fill out a job application for any positions that might become available. However, Mills was cautioned that she would be "treated as any other applicant," i.e., not given any special consideration or status due to her long tenure with First Federal.

On January 23, 1990, Mills wrote to the Audit Committee, requesting a letter of recommendation and stating that she would be "available" to assume another position at First Federal after January 31.[3] On Janu-

---

2. Although the minutes of the Board meeting are not clear, "teller shortage" presumably refers to a dearth of employees able to function as tellers at the S & L.

3. Mills claims that her letter was intended as a substitute for a formal job application, and asserts that the defendant's failure to treat it as such (and therefore, its failure to consider her for a new position) amounts to evidence of age discrimination. On an unspecified date in January,

according to Mills, Silver informed her that he would consider a letter in lieu of a formal application for a new position. However, as a member of the Audit Committee, Silver only had hiring responsibility for the Quality Control position, from which Mills had just been fired. Mills also claims (without corroboration in the record) that when Derr gave her a blank application (sometime in January of 1990), he advised her that "either a letter or the form was acceptable"

ary 25, 1990, the Committee members met and discussed, among other things, Mills' request for a letter of recommendation. The minutes of the meeting reflect that although the Committee deemed Mills' request unusual, they agreed to acquiesce to her wishes and furnish her with a letter. Beasley noted, with respect to her request for continued employment, that Mills had previously (on January 24) been provided with an application, but that no positions were currently open at First Federal. Beasley also informed the Committee that in spite of numerous requests, Mills had not yet furnished him with a detailed work-in-progress report, which was essential for a smooth transition to the next Quality Control Auditor.[4]

Following this discussion, Mills joined the meeting and was presented with the letter of recommendation. The letter stated that although Mills had attended educational seminars and workshops during her tenure as Quality Control Auditor, she seemed unable to apply what she had learned in her position. The letter further stated that as regulation of the thrift industry changed and expanded, the Committee was of the belief that Mills had been unable to keep up with the demands of the job. Mills requested that the letter be amended to include a description of her duties in her previous position (bookkeeper), and that it reflect her "genuine concern for both the customers and employees" of First Federal. The Committee agreed to these changes. When Silver asked Mills if she had received an application for employment, the plaintiff acknowledged that she had.

The Committee took no formal action with respect to Mills' letter of January 23 (which she characterizes as an application for reemployment) because she never submitted a formal job application, notwithstanding the Committee's instructions to do so and despite

the fact that Steve Derr (the defendant's Secretary–Treasurer) gave Mills an application form on January 24, 1990. Mills stated in her deposition that she had read the application and decided that "the questions really didn't apply" to her.

Thirty-two year-old Pam Palmer, First Federal's Comptroller, was hired to replace Mills as the Quality Control Auditor. At the time she was terminated, Mills was earning an annual salary of $26,000, an amount that had not increased dramatically in the previous four years.[5] First Federal initially paid Palmer, Mills' replacement, $25,128 annually, slightly less than it had been paying Mills. However, by 1991 Palmer's salary had risen to $26,500, and it currently is $30,000 a year.

According to Mills, Marjory Rand, another employee at First Federal, was also a victim of age discrimination. In April of 1994, Rand signed an affidavit (prepared by counsel for First Federal) stating that she did not believe that she had been discriminated against on the basis of her age. However, in August of 1994, Rand recanted this statement, and (in an affidavit notarized by Mills' counsel) averred that she now believed she had been discriminated against due to age, and had been pressured into making the earlier affidavit. Apparently, Rand has filed charges of discrimination against First Federal, but the second affidavit does not set forth any details concerning First Federal's allegedly discriminatory practices. According to the defendant's brief, Rand is still employed by First Federal.

### B.   *Procedural Background*

After exhausting her administrative remedies, as required by 29 U.S.C. § 626, Mills filed suit against First Federal in the district court on December 17, 1991, alleging that she had been discharged because of age, in viola-

---

to let First Federal know that she wished to be considered for other positions. The portions of Derr's deposition that are included in the record do not specifically contradict Mills on this point, nor do they reflect that any such conversation ever took place. Nevertheless, the record clearly establishes that (1) Mills was not given an application until January 24 (one day *after* submitting the letter that she claims to have submitted in lieu of the application form), and (2) Mills ac-

knowledged receipt of this form at the Audit Committee's January 25 meeting (discussed below) and said nothing about intending her letter as a substitute for the application form.

**4.**   This document, according to the deposition of Steve Derr, was never completed.

**5.**   Mills' salary was as follows: $25,000 (1986), $25,500 (1987), $26,000 (1988), $26,000 (1989).

tion of the ADEA. Two and a half years later, following extensive discovery, First Federal filed a motion for summary judgment. The district court granted the motion on April 5, 1995, dismissing the plaintiff's case in its entirety. After review of the record, the district judge ruled that Mills "ha[d] failed ... to raise a genuine issue of material fact in support of a claim of age discrimination by First Federal in terminating and refusing to re-hire her." *Mills v. First Federal Savings & Loan Association,* No. 91 C 20361, 1995 WL 155036 (N.D.Ill. April 5, 1995).

## II. ISSUES

■ The question presented in this appeal is whether the district court's granting of summary judgment in favor of First Federal was proper. The outcome of our analysis depends on whether the evidence of age discrimination creates a genuine issue of material fact that requires a trial. An ADEA plaintiff may establish age discrimination either (1) by using direct evidence, or (2) by relying on the "burden-shifting" analysis outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Therefore, we assess the district court's summary judgment ruling in light of each of these methods.

## III. DISCUSSION

### A. *Summary Judgment Standards*

■ "We review the district court's grant of summary judgment *de novo,* drawing all reasonable inferences from the record in the light most favorable to the non-moving party." *Johnson v. Runyon,* 47 F.3d 911, 917 (7th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). A trial judge will grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91

L.Ed.2d 265 (1986). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510). "Conclusory allegations by the party opposing the motion cannot defeat the motion." *Id.* The nonmoving party (Mills) must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. *ADEA*

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an individual on the basis of age. 29 U.S.C. § 623(a). The legislation protects workers, such as the plaintiff, who are between the ages of forty and seventy. 29 U.S.C. § 631(a).

It is well established that an ADEA plaintiff:

> may prove age discrimination in one of two different ways. She may try to meet her burden head on by presenting direct or circumstantial evidence that age was the determining factor in her discharge. Or, as is more common, she may utilize the indirect, burden-shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted to age discrimination claims under the *ADEA.*

*Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994) (citations and quotation omitted); *Anderson v. Stauffer Chemical Co.,* 965 F.2d 397, 400 (7th Cir. 1992).

### 1. *Direct Evidence of Discrimination*

■ To prove age discrimination using direct evidence, an ADEA plaintiff must establish "that he would not have been discharged 'but for' his employer's motive to discriminate against him because of his age." *Karazanos v. Navistar Int'l. Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991) (quotation omitted); *Stauffer Chemical,* 965 F.2d at 400

("The plaintiff need not prove that the employer was motivated by age *alone* ... it is enough that age was a 'determining factor' or a 'but for' element in the employer's decision."). We have also held that "an employer statement that reveals hostility to older workers" may constitute direct evidence of discrimination, but have noted that such remarks are "rarely found." *Castleman v. Acme Boot Co.*, 959 F.2d 1417, 1420 (7th Cir.1992). Furthermore, in *Troupe v. May Dept. Stores Co.*, we remarked that statements which constitute direct evidence of discrimination may come from either an employer or his or her agents. 20 F.3d 734, 736 (7th Cir.1994).

Mills argues that she has presented the following direct evidence of age discrimination: (1) Silver's remark, at a 1987 office Christmas party, to the effect that management was out to get rid of Mills and Rand, who happened to be the two oldest employees at First Federal, because they could not keep up with new regulations, (2) Winkelman's comment, at the December 18, 1989 meeting of the Audit Committee, that Mills was about his age (55) and therefore might have a difficult time finding a new job, and (3) the alleged practice of giving younger workers at First Federal counseling and warnings before they were terminated.

### (a) *Silver's Comments*

█ In her affidavit, Mills described Silver's remarks as follows:

Mr. Silver had previously told me that management was out to get rid of me and Marjorie Rand, the two oldest employees at the time. Mr. Silver mentioned something about management's concern that we may not be able to keep up with the regulations. I took this to mean it was because of our age.

The trial judge properly rejected this alleged "direct evidence" of discrimination, observing that while the plaintiff may have subjectively *perceived* these comments as age-related and discriminatory, they were not necessarily so:

Read alone, the first sentence of this paragraph would appear to allow two reasonable interpretations: first, that Silver stated only that management was out to get rid of Mills and Rand, and that the phrase "the two oldest employees at the time" is information added by Mills to characterize who Mills and Rand are; second, that "the two oldest employees at the time" was Silver's characterization of Mills and Rand, and thus the phrase was part of his comment.

When the first sentence of the passage is read in conjunction with the second and third sentences, however, the latter interpretation is no longer reasonable. The latter two sentences make it clear that Silver provided a reason management wanted to get rid of Mills and Rand (the concern that they could not keep up with the new regulations) and that it was Mills who was seeing the age-related aspect of it (especially Mills' statement, *"I took this to mean it was because of our age."* (emphasis added)).

That there is only one reasonable interpretation of the affidavit is supported by Mills' deposition. When asked, "What did Mr. Silver tell you?," Mills replied simply, "He told me that I needed to be careful because First Federal was trying to replace me and Marjorie Rand" and did not mention age. When Mills was asked in her deposition whether any member of management had made any age-related comment in her presence and when she was asked if she had ever heard of any member of management making an age-related comment, she made no mention of Silver or of his warning that management was "out to get rid of" Mills and Rand (or older employees at First Federal).

We agree with the district court's well-reasoned and objective analysis of Silver's remarks. Mills may honestly believe that Silver's remarks are evidence of age-related bias, but we disagree and call the plaintiff's attention to other cases in which we have held that the "subjective beliefs of the plaintiff ... are insufficient to create a genuine issue of material fact." *McMillian v. Svetanoff,* 878 F.2d 186, 190 (7th Cir.1989) (affirming summary judgment in favor of defendant in race discrimination claim). Indeed, if the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves,

create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed. *See Visser v. Packer Engineering Associates,* 924 F.2d 655, 659 (7th Cir.1991) ("Discrimination law would be unmanageable if disgruntled employees ... could defeat summary judgment by ... speculating about the defendant's motives. There would be no summary judgments in age discrimination cases.").

### (b) *Winkelman's Comment*

■ Similarly, Winkelman's comment concerning the difficulty older workers face when looking for re-employment does not provide direct evidence of discrimination. At the December 18 Audit Committee meeting, Winkelman (according to Mills) stated that the plaintiff "would have a terrible time getting another job because of [her] age." Winkelman said nothing about the *reasons* for Mills' discharge, but merely commented that older individuals have a more difficult time finding employment than do younger people, who obviously have a potentially longer future with an employer. *See, e.g.,* Kim Norris, *The Age of Rejection in the U.S. Work Force,* St. Petersburg Times, Aug. 15, 1994, 1994 WL 4810957. Indeed, at the risk of stating the obvious, one of the reasons Congress enacted the ADEA was to protect older workers who lose their jobs and then face such age discrimination in the search for re-employment.

We also think it significant, though perhaps not dispositive, that Winkelman himself was 55 years old (Manley was the same age and Silver, the third member of the Audit Committee, was 70). In light of Winkelman's age (two years older than the plaintiff), we think it unlikely that his remark to Mills had any discriminatory undertones. Although persons of *any* age are capable of practicing age discrimination, we do not think that Winkelman's comment is evidence of such discrimination. Rather, it seems that Winkelman was trying to express empathy and understanding concerning the plaintiff's predicament.

### (c) *Lack of Warnings/Counseling/Training*

■ Finally, Mills contends that—unlike herself—younger employees at First Federal were given warnings, counseling, and training before they were discharged. Mills ignores the fact that she was more than adequately informed of her performance deficiencies. Specifically, she overlooks the Audit Committee meeting in 1986 (at which she was admonished to improve her reporting), her 1988 performance review and her written goals for 1989, and the four Audit Committee meetings in 1989 at which she was present and her work repeatedly critiqued. Deficiencies in her reporting (i.e., lack of clarity, repetitiveness, tardiness, omission of detail, and unfamiliarity with new federal regulations) were called to her attention, with some specificity, on more than one occasion. Not only was Mills sufficiently warned about her poor performance, she was given three full years in which to improve her effectiveness. First Federal even went so far as to arrange for Mills to attend a training course where she might learn more about regulations affecting the thrift industry. Despite First Federal's constructive criticism and its other efforts to assist Mills, her job performance failed to improve and remained unsatisfactory.

For the reasons set forth, we agree with the trial judge that the plaintiff has failed to point to any direct evidence of discrimination that creates a genuine issue of material fact as to whether First Federal terminated Mills on the basis of her age. At most, Mills has introduced evidence that is merely colorable and therefore summary judgment is appropriate. *See Anderson,* 477 U.S. at 247, 249–50, 106 S.Ct. at 2509, 2510–11 ("[T]he mere existence of *some* alleged factual dispute ... will not defeat ... summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). The only remaining question is whether, using the *McDonnell Douglas* burden-shifting method of proof, Mills could persuade a reasonable jury that she was a victim of age discrimination.

### 2. *Burden Shifting Analysis*

■ Under the *McDonnell Douglas* approach, as applied in the age-discrimination context:

If the plaintiff succeeds in establishing a *prima facie* case, this creates a rebuttable presumption of discrimination, and the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's discharge. If the employer is successful, the presumption dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext for discrimination.

*Baxter Healthcare*, 13 F.3d at 1122. "The ultimate burden of *persuading* the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (quotation omitted, emphasis added).

### (a) *Prima Facie Case*

■■■ A *prima facie* case of age discrimination is established when the plaintiff demonstrates that "(1) she was a member of the protected class (age 40 or over), *(2) she was doing the job well enough to meet her employer's legitimate expectations*, (3) she was discharged or demoted, and (4) the employer sought a replacement for her." *Baxter Healthcare*, 13 F.3d at 1122 (emphasis added).[6] We agree with the district court that Mills has failed to present sufficient evidence that she was meeting her employer's legitimate expectations and consequently, we hold that she has fallen short of establishing a *prima facie* case of age discrimination.

■■■ The plaintiff contends that she always completed her work in an acceptable manner, that she never received any formal warnings of poor job performance, and that her job performance evaluations were generally satisfactory. However, these assertions are insufficient to contradict the detailed evidence of First Federal's displeasure with Mills' performance in the Quality Control position. While it is true that a "nonmoving party's own affidavit or deposition can constitute affirmative evidence to defeat a summary judgment motion," *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir.1994), "conclusory statements in [the plaintiff's] affidavit [or deposition] do not create an issue of fact." *Sample v. Aldi Inc.*, 61 F.3d 544, 549 (7th Cir.1995) (citations omitted); *see also, Dey v. Colt Const. & Development Co.*, 28 F.3d 1446, 1460 (7th Cir.1994) ("An employee's self-serving statements about his ability ... are insufficient to contradict an employer's negative assessment of that ability.") (quotation omitted). Mills "must do more than challenge the judgment of [her] superiors through [her] own self-interested assertions" because "[t]he employee's perception of [her]self ... is not relevant. It is the perception of the decision maker which is relevant." *Karazanos*, 948 F.2d at 337–38 (quotation omitted).

While the record contains scant evidence (if any) to support the plaintiff's contention that she was performing her job to First Federal's satisfaction, it contains abundant evidence that she was falling short of her employer's legitimate expectations,[7] *particularly with regard to the reporting duties that were such an important aspect of Mills' job.*

---

**6.** The fourth element "has seen several variations in this Circuit," largely as a result of "the different types of age discrimination cases that arise." *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1331 (7th Cir.1995); *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 153 n. 2 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994). Recently, the United States Supreme Court held that an age-discrimination plaintiff, in order to establish a prima facie case, need not demonstrate that his replacement falls outside the protected class. *O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *see also Carson v. Bethlehem Steel Corp.*, 82 F.3d 157 (7th Cir. 1996) (discussing *O'Connor*). However, because Mills' case turns on whether she estab-

lished the second element, we need not discuss the various permutations and requirements associated with the fourth and final element.

**7.** This court (quite properly) has been reluctant to delineate specifically what constitutes a "legitimate" expectation on the part of an employer. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 463 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). Nevertheless, our cases hold that a legitimate expectation is both (a) objectively reasonable, and (b) adequately communicated to the employee. *Id.* First Federal's expectation of accurate and informative reporting from its Quality Control Auditor certainly meets these criteria.

Mills' assertions of acceptable job performance are flatly contradicted by: (1) the Audit Committee's Fall 1986 suggestion that Mills' reports needed improvement and that she needed to be more independent from management; (2) Mills' 1988 performance review, during which Beasley and Derr noted the lack of detail in plaintiff's reports and encouraged her to become more familiar with regulatory changes and to report on the same to the Committee; (3) Mills' memo outlining her goals for 1989, which included improved communication with the Committee and learning more about regulations affecting the thrift industry; (4) the recommendations of First Federal's outside auditor (KPMG Peat Marwick), during 1988–89, that the Quality Control position needed to be strengthened and reports from the bank improved; (5) the criticism leveled at Mills' reports during half a dozen Audit Committee meetings in the year preceding her termination, plus the discussion of Mills' poor performance at both the Board of Directors and Asset/Liability Committee meetings in November of 1989; (6) Mills' written performance evaluations, which (although satisfactory overall) noted the need for improvement in reporting skills; and (7) the depositions of Manley, Silver, and Winkelman, which allude to Mills' inability to keep up with new government regulations, her lack of communication with the Board and the Audit Committee, and specifically, the lack of detail in her reports.

Although most of the criticism of Mills concerned the *substance* of her reports (discussed above), we note that some of it also focused on the plaintiff's inability to submit paperwork in a timely fashion. For example, according to Pam Palmer, Mills consistently submitted her reports late in the month, even though she had been requested to complete them earlier in order that the Board members might have adequate time to review them. As of the day the Audit Committee decided to recommend Mills' termination (December 13, 1989), the plaintiff was more than a month late in submitting an annual audit agenda for 1989. Similarly, at the time Mills requested a letter of recommendation from the Audit Committee (in late January 1990), she had not yet prepared a crucial work-in-progress report, despite numerous reminders to do so.

The district court described First Federal's expressions of concern about the plaintiff's job performance as a "steady drumbeat of concern" which began as early as 1986. One could, perhaps, quibble with this characterization. There was a considerable gap between the defendant's first documented criticism of Mills (in the Fall of 1986) and the performance appraisal that occurred towards the end of 1988. Nevertheless, the "drumbeat" of concern was certainly very steady throughout the entire year preceding Mills' termination, as evidenced by criticism of Mills at six separate meetings of the Audit Committee during 1989.

The evidence in the record, taken as a whole, makes it impossible for a reasonable person to credit Mills' assertion that she was meeting First Federal's legitimate expectations of job performance. Thus, we agree with the district court that the plaintiff has failed to establish even a *prima facie* case of age discrimination. First Federal was entitled to summary judgment because, in addition to Mills' failure to establish unlawful discrimination using direct evidence, she never cleared the required first hurdle under the *McDonnell Douglas* burden-shifting approach (establishing a *prima facie* case).

### (b) *Pretext*

■ Strictly speaking, it is not necessary for us to analyze Mills' ADEA claim further under the *McDonnell Douglas* rubric because we have concluded that she has failed to establish a *prima facie* case. Nevertheless, we wish to make clear that *even if we assume the existence of a prima facie* case, the evidence in the record does not create genuine issues of material fact warranting a trial.

■ As noted above, once a plaintiff-employee has established a *prima facie* case of age discrimination, the burden of production (not the burden of proof, which remains with the plaintiff throughout) shifts to the employer to articulate a legitimate, non-discriminatory reason for discharging the employee. *Stauffer Chemical,* 965 F.2d at 400;

*Hicks,* 509 U.S. at 506–08, 113 S.Ct. at 2747 (1993).[8] The defendant's burden of producing evidence of a legitimate, non-discriminatory reason "is merely a burden of production ... that is not difficult to satisfy," *Dale,* 797 F.2d at 463, and if the employer does satisfy this burden, "the presumption [of discrimination] dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext for age discrimination." *Baxter Healthcare,* 13 F.3d at 1122.

As noted previously in our discussion, First Federal has produced ample evidence that it discharged Mills for legitimate, non-discriminatory reasons (namely, her persistently poor job performance). Thus, for purposes of our analysis, we hold that the burden has shifted one last time and "the ultimate burden is [now] on [Mills] to show that there is some genuine issue as to whether the stated reasons [for discharging her] form a pretext for age discrimination." *Stauffer Chemical,* 965 F.2d at 401.

            A pretext, in employment law, is a "phony reason" that the employer offers for engaging in discriminatory conduct (e.g., firing an employee because of her age and claiming it was for some other reason). *Visser,* 924 F.2d at 657. "A plaintiff can prove that an employer's proffered reasons for an employment decision are pretextual by one of two methods: (1) by showing that a discriminatory reason more likely than not motivated the employer ... or (2) that the employer's proffered explanation is unworthy of credence." *Kralman,* 23 F.3d at 156; *Dale,* 797 F.2d at 464. In attempting to show pretext, "[t]he plaintiff must *specifically* refute the facts which allegedly support the employer's proffered reasons." *Collier v. Budd Co.,* 66 F.3d 886, 893 (7th Cir.1995) (emphasis added, quotation omitted).

Mills asserts that the following demonstrate pretext: (1) the comments of Silver and Winkelman (which Mills perceived as age-related), (2) allegedly "inconsistent and contradictory" statements given by First Federal to justify the discharge, (3) co-worker Marjory Rand's unsubstantiated claim that she, too, was fired by First Federal because of her age, and (4) the allegedly "preferential treatment of younger employees [at First Federal] in both disciplinary matters and transfers" and the fact that Mills was denied an opportunity to stay at First Federal in another position.[9] As noted previously, the remarks of Silver and Winkelman are not objectively discriminatory and Mills' subjective beliefs concerning these remarks may not be considered *direct* evidence of age discrimination. As evidence of pretext under the *McDonnell Douglas* approach, these comments are likewise of no avail to the plaintiff because, in our view, they do not permit even an *inference* that First Federal's proffered reasons for terminating Mills are phony or unworthy of belief. *See Visser,* 924 F.2d at 657 (if the defendant offers a pretext

---

**8.** "[F]or a reason to be 'legitimate,' in the sense of sufficient to rebut a prima facie case, it need not be a good or sympathetic justification for what the employer did; it need only be nondiscriminatory and ... explain why the challenged action was taken." *Timm v. Mead Corp.,* 32 F.3d 273, 275 (7th Cir.1994).

**9.** We agree with the district court that the proper way of thinking about First Federal's actions *subsequent* to terminating Mills is to analyze these actions as if Mills were bringing a refusal-to-hire claim and not a discharge claim, a discipline claim, or any kind of claim alleging disparate treatment of existing employees on the basis of age (as noted by the district court, the question of whether First Federal generally required formal applications for interdepartmental *transfers* is not relevant because Mills never sought such a transfer before being notified of her termination). Even if Mills could establish a *prima facie* case of age discrimination based on First Federal's re-

fusal to re-hire her in another position, she would still have to demonstrate that the proffered reason for not hiring her (failure to submit an application) was pretextual. We do not believe that Mills could make this showing because, as pointed out by the district court: (1) Mills was given an application and told that she would be treated just the same as any other applicant if a position became available (i.e., she would not be considered an interdepartmental transfer but a new hire), (2) Mills nevertheless failed to submit an application, claiming (without corroboration in the record) that Derr and the Audit Committee led her to believe an application was unnecessary, (3) the letter she submitted in lieu of an application (one day *before* Derr gave her an application form) made only a veiled reference to re-applying for a new position, and (4) the letter was submitted to the Audit Committee, which had no authority to hire or fire employees other than the Quality Control Auditor.

for why it fired the employee, "then the trier of fact is permitted, although not compelled, to *infer* that the real reason was age."). For reasons set forth ably by the district court judge, the remaining items of "evidence" relied upon by Mills to show pretext are either insubstantial, irrelevant, or unsupported by the record. Like the comments of Silver and Winkelman, they do not permit an inference that First Federal's reasons for discharging Mills were pretextual.[10]

More fundamentally, Mills has failed to meet her burden of showing pretext because she has not adduced any evidence *specifically* refuting First Federal's proffered reasons for terminating her employment. She has brought forth no evidence that she was performing satisfactorily *in the very area that gave First Federal the most concern* (reporting adequately to the Audit Committee). Although Mills' general performance evaluations over the nineteen-year history of her employment may have been "satisfactory or better," it is well-documented that in the opinion of the Audit Committee she fell far short of providing clear, accurate, and useful information in her reports to the Committee. As this court once observed, "[t]he fact that an employee does some things well does not mean that any reason given for [her] firing is a pretext for discrimination." *Stauffer Chemical,* 965 F.2d at 403. We hold that (even assuming the existence of a prima facie case), Mills has not succeeded under *McDonnell Douglas* because she has failed to meet her burden of showing that First Federal's reasons for firing her were pretextual.

## IV. CONCLUSION

▇▇▇ "The age discrimination law does not protect an older employee from being fired without good cause. It protects him from being fired because of his age." *Visser,* 924 F.2d at 657; *see also Bienkowski v. American Airlines,* 851 F.2d 1503, 1508 (5th Cir. 1988) ("The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated."). Our role as an appellate court is limited, and does not include determining whether First Federal was foolish or wise to discharge Mills. As we have noted in prior decisions, the ADEA does not empower this court to "sit as a super-personnel department that reexamines an entity's business decisions." *Sample,* 61 F.3d at 551 (quotation omitted); *see also McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992).

▇▇▇ This court has sometimes stated that "[c]aution is required in granting summary judgment," *Visser,* 924 F.2d at 660, especially in age discrimination cases such as this one, where the plaintiff is entitled to a jury trial and "intent and credibility are crucial issues." *Wolf v. Buss America, Inc.,* 77 F.3d 914, 918 (7th Cir.1996) (quotation omitted); *Kralman,* 23 F.3d at 152; *Visser,* 924 F.2d at 660. Nevertheless, it is also true that summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *United Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co.,* 794 F.Supp. 328, 330 (E.D.Mo.1992), *aff'd,* 991 F.2d 801 (8th Cir. 1993); *see also Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554–55 (summary judgment is not a "disfavored" remedy); *Skagen v. Sears, Roebuck & Co.,* 910 F.2d 1498, 1501 (7th Cir. 1990) (rejecting plaintiff's argument that summary judgment is *per se* inappropriate in age discrimination cases).

▇▇▇ The standard governing summary judgment is clear: "[I]f no rational jury could, on the evidence presented in the summary judgment proceeding, bring in a verdict for the party opposing summary judgment ... then summary judgment *must* be granted." *Visser,* 924 F.2d at 660 (emphasis added). We are convinced that regardless of which method of proof Mills chooses to rely upon, the evidence in the record does not create genuine issues of material fact that must be resolved in a trial. Even when we

---

**10.** We believe it is unnecessary that we engage in a lengthy analysis here for two reasons: (1) as noted above, the plaintiff has not established a *prima facie* case, so that extensive consideration of the pretext issue is not required, and (2) the district court's analysis is both detailed and correct.

consider the record in the light most advantageous to Mills, we conclude that a reasonable jury could not find in her favor. The district court's entry of summary judgment is

AFFIRMED.