**Theodore A. JOHNSON, Plaintiff,**

**v.**

**NATIONAL RAILROAD PASSENGER CORPORATION (Amtrak), Defendant.**

**No. 96 C 3190.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 21, 1998.

Theodore A. Johnson, Merrillville, IN, for Plaintiff.

Carol Louise Brown, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Theodore A. Johnson, acting *pro se*, filed suit against the defendant, National Railroad Passenger Corporation ("Amtrak"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. Mr. Johnson claims he was fired because of his race, African–American, and because of his gender. Amtrak moves for summary judgment pursuant to Fed. R.Civ.P. 56. For the following reasons, the motion is granted.

### Background

Mr. Johnson was hired by Amtrak as a laborer in 1989, and in 1992 he became a supervisor on the third shift (11 p.m. to 7 a.m.). His job was to supervise employees who cleaned train cars after the trains had completed their runs. (Johnson Dep. at 38–43.) In August 1993, one of the employees he supervised, Kim Nguyen, complained that Mr. Johnson was harassing her. She said he repeatedly asked her out on dates despite her requests to the contrary. In addition, she said he touched her inappropriately and retaliated against her for refusing his advances. Ms. Nguyen also said Mr. Johnson threatened to hit her with a flashlight and used racially derogatory language toward her and a coworker. (Johnson Dep. at 43–44; Wood Aff. ¶ 2.)

Several of Ms. Nguyen's allegations stem from an incident she alleges occurred early in the morning of August 23, 1993. (DeMotses Aff. Ex. 1 at 2–5.) Ms. Nguyen claims Mr. Johnson became angry at her and a coworker, Mike Martin, after they tried to contact Mr. Johnson by radio to clarify Ms. Nguyen's work assignment. *Id.* at 2. According to Ms. Nguyen and other witnesses who testified at an Amtrak hearing,[1] Mr. Johnson entered the coach car where Ms. Nguyen and Mr. Martin were working, and began speaking abusively to them. *Id.* at 2–4. Mr. Johnson allegedly swung a flashlight repeatedly and at one point struck the end of Ms. Nguyen's nose with it. *Id.* at 2. He also allegedly shoved Ms. Nguyen, called her a "big mouth" and a "troublemaker," and threatened to make her life miserable. *Id.* at 2–3.

Mr. Johnson denies Ms. Nguyen's allegations. (12(N) ¶ 6; DeMotses Aff. Ex. 1 at 5.) In his testimony at the Amtrak hearing, he gave a different account of the August 23 incident, alleging that it was Ms. Nguyen who spoke abusively to him. Mr. Johnson said Ms. Nguyen at one point put her hands on him and turned him around, shouting that he had no right to talk to Mr. Martin. (DeMotses Aff. Ex. 1 at 5.) Daniel Collins, who testified on Mr. Johnson's behalf at the Amtrak hearing, gave essentially the same account of the August 23 incident. *Id.* at 4.

Mr. Collins also testified that he had worked for Mr. Johnson at a cleaning business Mr. Johnson had run outside his Amtrak employment. (DeMotses Aff. Ex. 1 at 4; 12(M) ¶ 22.)

On August 27, 1993, John Wood, an Amtrak facility manager, met with Mr. Johnson, Ms. Nguyen, a union representative and other employees to discuss the allegations against Mr. Johnson. (Johnson Dep. at 47; Wood Aff. ¶ 4.) At that meeting, Mr. Johnson had an opportunity to hear the witnesses against him and to explain his side of the story. (Johnson Dep. at 50; 12(N) ¶ 9.) At the conclusion of the meeting, Mr. Johnson was transferred to the first shift. (Johnson Dep. at 49–51.)

The two sides dispute the outcome of the meeting. According to Mr. Johnson, Mr. Wood concluded there was insufficient evidence to warrant further investigation,[2] and said no discipline would be imposed on Mr. Johnson.[3] (12(N) ¶ 8.) Amtrak maintains, however, that Mr. Wood believed the allegations did warrant further investigation. (Wood Aff. ¶ 5.)

Mr. Wood referred the allegations to Charles Hull,[4] an Amtrak charging officer, for further investigation.[5] (Wood Aff. ¶ 5.) In September 1993, Mr. Johnson received a notice from Amtrak informing him he was being investigated for violation of three of Amtrak's Rules of Conduct: Rules E, F(1) and F(2).[6] (Johnson Dep. at 54–55.) On

---

1. The hearing took place on October 25, 1993. (DeMotses Aff. Ex. 1 at 2; 12(M) ¶ 20.)

2. In his deposition of July 2, 1997, Mr. Johnson gives a somewhat different account. According to that deposition, Mr. Wood indicated at the August 27 meeting that he believed the allegations against Mr. Johnson had some merit. Mr. Johnson also said in his deposition that he understood there would be further investigation of the allegations against him. (Johnson Dep. at 49–50.)

3. Mr. Johnson cites the testimony of his supervisor, Michael Diaz, and union official Gary Annest, both of whom testified at the Amtrak hearing. Mr. Diaz confirmed that Mr. Wood said no discipline would be brought against Mr. Johnson; Mr. Annest testified that Mr. Wood said no charges would be brought against Mr. Johnson. (12(N) Ex. A at 152; 12(N) Ex. B at 17.)

4. Mr. Johnson maintains that "the deck was stacked against [him] in order to get [him] fired."

(12(N) ¶ 25.) He asserts that Mr. Wood was offended by comments Mr. Johnson made at a prior hearing in 1991, and that Mr. Hull was a "buddy" of Mr. Wood's. (Johnson Aff. ¶ 14.) In his deposition of May 5, 1998, Mr. Wood said he did not recall the comments Mr. Johnson had made. (Wood Dep. at 17.)

5. Mr. Johnson disputes Amtrak's assertion that Mr. Wood had no further involvement in the investigation after the August 27 meeting. Mr. Johnson contends that the witnesses Mr. Wood said he interviewed before the August 27 meeting were in fact interviewed after the meeting. (12(N) ¶¶ 11, 15; Wood Aff. ¶ 6.)

6. Rule E prohibits Amtrak employees from discriminating against others on the basis of race, sex, creed, color, national origin, religion, age, or disability. It also bars employees from retaliating against other employees "who have exercised their rights under company procedures or anti-discrimination laws." (DeMotses Aff. Ex. 1 at 1.)

October 25, 1993, a hearing was held where evidence was presented by both sides and where Mr. Johnson had a full opportunity to present his version of events. (Johnson Dep. at 56, 63; Hull Aff. ¶ 7; DeMotses Aff. ¶ 2.) Carl DeMotses,[7] who presided over the hearing, found that Mr. Johnson had violated Rules F(1) and F(2), but not Rule E. (DeMotses Aff. ¶ 5, Ex. 1.) Mr. DeMotses said he made his decision based on all the evidence presented at the hearing, including his assessment of witnesses' credibility. *Id.* ¶ 4.

Mr. DeMotses forwarded his decision to John Pearson, an Amtrak superintendent, who decided Mr. Johnson should be dismissed. (DeMotses Aff. ¶ 6, Ex. 1 at 6; Pearson Aff. ¶ 4.) Mr. Johnson was terminated on November 9, 1993. (Johnson Dep. at 58; DeMotses Aff. Ex. 1 at 6.) However, he was later rehired after his union filed a grievance that went to arbitration. (12(M) ¶ 33; Johnson Dep. at 62.) The arbitrator found that it was procedurally inappropriate for Amtrak to have disciplined Mr. Johnson subsequent to the August 27 meeting (with Mr. Wood), and ordered Mr. Johnson reinstated. (Johnson Dep. at 62–64.) The arbitrator made no determination on the merits of whether Mr. Johnson violated the Amtrak Rules of Conduct. Further, there was no discussion at the arbitration of the misconduct charges underlying Mr. DeMotses' decision. (12(M) ¶ 33; Johnson Dep. at 62–64.)

*Motion for Summary Judgment*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In other words, summary judgment must be granted "if no rational jury could, on the

evidence presented in the summary judgment proceeding, find for the party opposing summary judgment." *Mills v. First Fed. Sav. & Loan Ass'n,* 83 F.3d 833, 846 (7th Cir.1996). The evidence relied upon by either party must be "of a type otherwise admissible at trial." *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996). In addition, the evidence is to be construed in the light most favorable to the nonmoving party, and "all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, the party who bears the burden of proof on an issue may not rest on "the mere allegations or denials of the adverse party's pleading," but must set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

*Race Discrimination*

Mr. Johnson argues that Amtrak, in firing him, discriminated against him because of his race. Mr. Johnson does not present any direct evidence of discrimination; therefore, he must use the indirect, burden-shifting method outlined in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Under that method, Mr. Johnson must first establish, by a preponderance of the evidence, a prima facie case of racial discrimination. *Id.* at 506, 113 S.Ct. 2742. He must show that (1) he is African–American, (2) he performed his job satisfactorily, (3) he was fired, and (4) Amtrak treated other, similarly situated non-African-American employees more favorably. *Id.; Oates v. Discovery Zone,* 116 F.3d 1161, 1171 (7th Cir.1997); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir.1997). If Mr. Johnson makes out a prima facie case,

Rule F(1) requires employees to conduct themselves in a courteous and professional manner. It bars boisterous conduct or horseplay and profane or vulgar language. *Id.*

Rule F(2) states that "[e]mployees will not assault, threaten, harass, intimidate, fight or participate in any activity which could cause bodily injury … while on duty or on Amtrak property or using Amtrak equipment." It also bars employees from disrupting or interfering with other

employees in the performance of their duties. *Id.*

7. Mr. Johnson notes that Mr. DeMotses had presided over a previous hearing involving him, and Mr. Johnson implies that Mr. DeMotses was therefore prejudiced against him. (12(N) ¶ 25.) However, Mr. DeMotses found in favor of Mr. Johnson at the prior hearing. (Wood Dep. at 17.)

a presumption of discrimination arises, and the burden of production shifts to Amtrak, which must show a "legitimate, nondiscriminatory reason for its action." *Plair*, 105 F.3d at 347. If Amtrak meets that burden, Mr. Johnson must show by a preponderance of the evidence that Amtrak's explanation was simply a pretext for discrimination. *Oates*, 116 F.3d at 1170.

Mr. Johnson easily meets three elements of the prima facie case. He is African-American, and he was fired by Amtrak. Further, his dismissal was not for poor performance, so he was performing his job satisfactorily.

Amtrak argues that Mr. Johnson cannot prove the fourth element: that he was treated more harshly than non-African-American employees who were similarly situated. (Amtrak Mem. at 3.) Mr. Johnson points to Edward Klaja, a Caucasian foreman accused of similar misconduct, who was reprimanded rather than discharged. (Amtrak Mem. at 3; 12(N) ¶ 34.) However, Amtrak contends that Mr. Klaja was not similarly situated to Mr. Johnson. First, Amtrak argues that Mr. Klaja was found to have engaged in less serious conduct than Mr. Johnson. Mr. Klaja was found to have violated Rule F(1) of the Rules of Conduct "by engaging in or allowing dialogue about nude photographs and sexual innuendos [sic] to be made in the presence of a female employee." (Amtrak Mem. at 3.) Mr. Johnson, on the other hand, was found to have violated both Rules F(1) and F(2) by harassing and physically threatening Ms. Nguyen, by using racially derogatory language toward her, and by retaliating against her because she refused to date him. (Amtrak Mem. at 3; DeMotses Aff. Ex. 1 at 5–6.) Amtrak asserts that because Mr. Johnson's misconduct was more serious than Mr. Klaja's, no inference of discrimination can be drawn from the difference in discipline. *Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 264–65 (7th Cir.1997).

Amtrak also emphasizes that different decision makers were involved in the two cases. Mr. Klaja's hearing officer was W.E. Ullmark, while Mr. Johnson's was Carl DeMotses. Further, it was Marshall Berryhill who decided to reprimand Mr. Klaja. The decision to fire Mr. Johnson was made by Jack Pearson. (Amtrak Mem. at 4.) Amtrak argues that because the decisions in the two cases were made by different people, Mr. Klaja and Mr. Johnson were not similarly situated. *See Plair*, 105 F.3d at 349 n. 3 (noting that where different decision makers are involved, employees are rarely similarly situated)·(citing *Timms v. Frank*, 953 F.2d 281, 287 (7th Cir.1992)).

Mr. Johnson argues that it makes no difference which of the subdivisions of Rule F were violated, and that the focus should be on the nature of the misconduct rather than on specific company rules. (12(N) ¶ 37; Johnson Mem. at 4.) However, violation of only one rule is different from a violation of two rules, especially when the second rule refers to more serious misconduct. Mr. Klaja was found to have violated only Rule F(1), which bars uncourteous conduct such as horseplay or vulgar language. Mr. Johnson was found to have violated F(2) as well, which prohibits assaults, threats, harassment or other activity which could cause bodily injury. Clearly, F(2) refers to more serious conduct than F(1). In addition, Amtrak's argument focuses not only on the specific subdivisions violated but on the relative seriousness of the misconduct. Because of that difference in seriousness, Mr. Klaja and Mr. Johnson were not similarly situated.

Mr. Johnson also argues that different decision makers do not necessarily mean that he and Mr. Klaja were not similarly situated. However, that argument fails as well. As the court noted in *Timms*, when different decision makers are involved, "it is difficult to say that the difference [in treatment] was more likely than not the result of intentional discrimination." 953 F.2d at 287. That is precisely the burden Mr. Johnson bears here. He must show by a preponderance of the evidence that Amtrak treated similarly situated non-African-American employees more leniently than it did him. He has not met that burden.

Mr. Johnson asserts that a second Caucasian employee, John Boylan, also was found guilty of violating the Rules of Conduct and was not discharged. Mr. Johnson argues that Mr. Boylan's case is another example of Amtrak's treating Caucasian employees less severely than similarly situated African–

American employees. (12(N) ¶ 34.) Mr. Boylan, who was an Amtrak yardmaster, was charged with using rude, vulgar and profane language while speaking on the telephone with other Amtrak employees. (DeMotses Supplemental Aff. ¶ 3; Boylan Waiver.) He signed a waiver and accepted discipline, avoiding the necessity for a hearing. (Amtrak Reply to 12(N) Statement ¶ 34; Boylan Waiver.) Mr. Johnson's argument here fails as well. The misconduct with which Mr. Boylan was charged was less serious than Mr. Johnson's misconduct. On that basis alone, Mr. Boylan and Mr. Johnson are not similarly situated.

Mr. Johnson has not shown that Amtrak treated similarly situated Caucasian employees less harshly than it treated him. Thus, he has not made out a prima facie case of race discrimination.

■ Even if he could present a prima facie case, Mr. Johnson has not shown that Amtrak's stated reason for his discharge, the violation of Rules F(1) and F(2), was a pretext for discrimination. In order to show pretext, Mr. Johnson must either present (1) direct evidence that a discriminatory reason motivated Amtrak's decision, or (2) evidence that Amtrak's stated reason is unworthy of credence. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1310 (7th Cir.1997). In considering pretext, the central question is whether the employer honestly believed its stated reason for discharge. *Id.* "The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual." *Id.*

■ Amtrak's reasons for firing Mr. Johnson were clearly stated in the decision by hearing officer Carl DeMotses dated November 8, 1993. (DeMotses Aff. Ex. 1.) In that decision, the testimony of witnesses at the October 25 Amtrak hearing is recounted, and Mr. DeMotses' conclusions are stated. *Id.* Mr. DeMotses found that Mr. Johnson violated Rules F(1) and F(2). He concluded that Mr. Johnson's manner toward Mr. Martin and Ms. Nguyen was "discourteous and unprofessional," and that Mr. Johnson "used vulgar language, made racial slurs and displayed conduct ... which was both verbally and physically threatening." *Id.* at 5. Mr.

DeMotses also concluded that Mr. Johnson had threatened and harassed Ms. Nguyen on several occasions prior to August 23, 1993. He added that there was a "strong likelihood" that Ms. Nguyen's refusal to date Mr. Johnson was a motivating factor behind Mr. Johnson's conduct toward her. *Id.*

Mr. DeMotses also noted that the testimony of Ms. Nguyen and Mr. Martin was credible but that the testimony of Mr. Collins was less credible. He added that Mr. Johnson's testimony at the hearing was "deemed to be a self serving attempt to fabricate a response" in order to avoid the consequences of his actions. *Id.*

Mr. DeMotses stated (and Mr. Johnson admits) that he made his decision based on all the evidence presented by both sides at the hearing, including his own assessments of witnesses' credibility. (DeMotses Aff. ¶ 4; 12(N) ¶ 27.) Mr. Johnson admits he had a full opportunity to present his version of events at the hearing. (12(N) ¶ 24; Johnson Dep. at 63.) He also admits that Amtrak's investigation of the charges against him was thorough. (12(N) ¶ 32; Johnson Dep. at 54.)

Amtrak presents legitimate, nondiscriminatory reasons for firing Mr. Johnson, and Mr. Johnson has presented no evidence that Amtrak did not honestly believe those reasons. Mr. Johnson attempts to show that Amtrak's reasons are unworthy of credence by arguing that Mr. Wood and Mr. Hull conspired to have him fired, and by implying that Mr. DeMotses bore him ill will because he had presided over a previous hearing involving Mr. Johnson. (Johnson Aff. ¶ 14; 12(N) ¶ 25.) Mr. Johnson alleges that Mr. Wood was offended by comments Mr. Johnson made at a 1991 hearing and that Mr. Wood therefore named his "buddy," Mr. Hull, to conduct further investigation of the 1993 allegations against Mr. Johnson. (Johnson Aff. ¶¶ 13–14.) However, Mr. Johnson provides no evidence of such a conspiracy other than his own unsupported allegations, Mr. Wood's admission that he knew Mr. Hull, and Mr. Hull's admission that he and Mr. Wood were friends and had previously worked together. (Johnson Aff. ¶¶ 12–14.) Mr. Johnson's suggestion that Mr. DeMotses bore him ill will because of a previous

hearing also lacks merit. In fact, Mr. De-Motses found in favor of Mr. Johnson at that hearing. (Wood Dep. at 17; Reply to 12(N) ¶ 25.) Mr. Johnson has not shown that Amtrak's reasons for firing him were pretextual.[8]

### Gender Discrimination

 Mr. Johnson presents no direct evidence of gender discrimination. Hence, he must use the same indirect, burden-shifting method of proof as in his race discrimination claim. *Greenslade v. Chicago Sun–Times, Inc.*, 112 F.3d 853, 863. In order to prove a prima facie case under that method, he must once again show, *inter alia*, that Amtrak treated a similarly situated female employee more favorably than it did him. *Id.* However, the only employees Mr. Johnson contends were similarly situated to him are Edward Klaja and John Boylan, both of whom are males. Therefore, Mr. Johnson has not established a prima facie case of gender discrimination.

Because Mr. Johnson has not presented a prima facie case of either race or gender discrimination, no rational jury could, on the evidence presented here, bring in a verdict in his favor. *See Mills*, 83 F.3d at 846. Therefore, summary judgment is granted.

### Conclusion

For the foregoing reasons, Amtrak's motion for summary judgment is granted.

---

8. It is true that an arbitrator ordered Mr. Johnson reinstated after his firing. However, that decision is irrelevant to the instant case. The arbitrator found that it was procedurally inappropriate for Amtrak to have imposed discipline subsequent to the August 27 meeting with Mr. Wood. (12(M) ¶ 33; Johnson Dep. at 62–63.) No determination was made as to whether Mr. Johnson had violated the Rules of Conduct. (12(M) ¶ 33; Johnson Dep. at 62–64.) In addition, there was no discussion in the arbitration of the misconduct charges underlying Mr. De-Motses' decision. (12(M) ¶ 33; 12(N) ¶ 33.) Hence, the arbitrator's finding does not reflect on Amtrak's reasons for firing Mr. Johnson.