116 F.3d 1483
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
DALE VELASCO, Plaintiff-Appellant,
v.
CURTIS INDUSTRIES, INC., Defendant-Appellee.
 No. 94-C-4331.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 23, 1997.*
June 24, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 94-C-4331; George W. Lindberg, Judge.
 Before POSNER, CUMMINGS, and BAUER, Circuit Judges.
 
 ORDER
 
 1
 Dale Velasco appeals the district court's grant of summary judgment in favor of Curtis Industries, Inc. ("Curtis") on his Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Title VII national origin discrimination, 42 U.S.C. § 2000e et seq., claims, which arose out of Curtis' termination of Velasco's employment. We affirm.
 
 
 2
 Velasco, a sixty-five-year-old male of Spanish and English descent, was hired by Curtis in 1984 as an area manager in the Midwest sales district of its retail division, a sales position in the Chicago area. Curtis manufactures and sells key blanks and key cutting machines, and is a national distributor of fastener products, including nuts, bolts and screws. Velasco sold Curtis' fastener and key-related products to hardware and related retail stores. Velasco executed "area manager agreements" when he was hired and again in 1991 when Curtis was sold by its parent corporation. Both agreements prohibit "sidelining," which is defined as "promoting the business or products of any other company, partnership or individual, or engaging in any other business activity during normal business hours without the prior written consent of [Curtis]"; or "promoting the business or products of any other company, partnership, or individual which business or products are directly or indirectly competitive with the business or products of [Curtis], during normal business hours or otherwise, while an employee of [Curtis]."
 
 
 3
 Around 1991, Curtis' primary fastener competitor in the Midwest, the Hillman Company, pursued an aggressive marketing campaign toward the national hardware store chains (i.e., Ace, True Value and Service Star). This effort caused Curtis to lose hardware accounts throughout the Midwest, including approximately 12 such accounts previously serviced by Velasco. In early 1992, Richard Raines, Curtis' midwest regional manager, suggested three options to district manager John Quinlan, Velasco's immediate supervisor, for returning Velasco's territory to a profitable status: (1) relieve Velasco of the responsibility of developing new accounts; (2) restrict Velasco's territory to Lake County (from a territory that also included McHenry and parts of Cook and Kane counties) and "selected high volume accounts developed outside that territory"; or (3) wait until the end of the first quarter of 1992 and then develop a rehabilitation plan to address Velasco's declining sales.
 
 
 4
 In February 1992, Quinlan chose the second option. First, he removed all of the K-Mart accounts from Velasco and Tom Hannon, another Chicago area manager who was younger than Velasco and non-hispanic. The K-mart accounts were assigned to a part-time area manager. In addition, all of Velasco's territories with the exception of Lake County and some reserved accounts were given to Hannon.
 
 
 5
 In October 1992, with Velasco's income restricted by the reduction in his territory, he attempted to market new products by placing 96 4" X 6" Contico brand plastic organizer boxes in four hardware stores in which Curtis sold its products. He had purchased these boxes from a Walmart store and through "Dahl Marketing," a business Velasco had established in 1983. In the displays erected inside the hardware stores, Velasco promoted the Contico boxes both empty and with an assortment of Curtis and non-Curtis fasteners within them. All of the items offered for sale were Velasco's personal property and were offered to the hardware stores on a "30-day trial basis." Under this arrangement, the stores would eventually pay Velasco for any of his merchandise sold and he would keep the proceeds for himself. At the same time, Velasco submitted a "New Product Suggestion" form to Curtis' product marketing department, notifying the department that he would try to stock the organizer boxes in a few hardware stores. On November 4, 1992, after discovering Velasco's marketing scheme and confronting him with it, Moore terminated Velasco for "sidelining." The only other Curtis area manager who was determined to have engaged in "sidelining" was a white male in his late 50s and he also had been terminated. Velasco was not replaced, but his remaining territory was assumed by Hannon.
 
 
 6
 We review the district court's grant of summary judgment de novo. Sybron Transition Corp. v. Security Ins. Co. of Hartford, 107 F.3d 1250, 1254 (7th Cir.1997). Summary judgment is proper when the record, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." Weiler v. Household Finance Corp., 101 F.3d 519, 523 (7th Cir.1996).
 
 
 7
 In the absence of direct evidence of discrimination, a Title VII or ADEA plaintiff must first establish a prima facie case of discrimination indirectly by demonstrating that (1) he is within a protected class; (2) he was performing to his employer's legitimate expectations; (3) he experienced an adverse employment decision; and (4) others not within the protected class were treated more favorably. See Rabinovitz v. Pena, 89 F.3d 482, 486 (7th Cir.1994). Without a prima facie case, Velasco cannot withstand summary judgment and we need analyze this case no further. See Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir.1993).
 
 
 8
 Velasco clearly satisfies the first and third elements of the indirect method. With respect to the fourth element, Velasco clearly has not demonstrated that "similarly situated" persons outside his protected class were treated more favorably. See Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir.1997).
 
 
 9
 Velasco points to Hannon as the person outside his class who received more favorable treatment than he. He argues that Hannon, like himself, was having difficulty obtaining sales goals. In doing so, Velasco relies upon a June 29, 1992 memo from Raines, the regional manager, to Hannon and himself, which states: "It appears that both of you need additional accounts and volume in order to meet your expectations."
 
 
 10
 This memo does not establish that Velasco and Hannon were similarly situated. First, Hannon did not violate the "sidelining" agreement. Velasco clearly did so under the terms of the agreements he twice executed, notwithstanding his submission of a new product suggestion form that would indicate that he was not hiding his "sidelining" activity and did not think it would be a problem. To make a similarly situated comparison, Velasco must contrast his termination with the consequences befalling other area managers known by Curtis to have engaged in "sidelining." See Plair, 105 F.3d at 349 n. 3 (plaintiff terminated for misconduct did not offer "comparables" of the "same" misconduct as plaintiff) The only other person to engage in sidelining was a white male and he was fired.
 
 
 11
 In addition, Hannon did not sell fasteners and was, thus, unaffected by the Hillman Company's marketing advance into the national hardware chains. Hannon sold primarily keys and key machines. Velasco conceded this point in his own deposition when he testified that "Hannon's territory did not sell fasteners ... The emphasis for the company for many years was to sell fasteners. This is where they thought they could make their money."
 
 
 12
 Finally, the Raines memo does not state that Hannon's sales dropped as precipitously as Velasco's, or even declined at all. In light of Velasco's aforementioned deposition testimony, Hannon's sales performance could have diminished little, if any, with respect to fasteners, the product emphasized by Curtis for profit potential and the sales of which diminished substantially in Velasco's territory. Because the memo did not place Velasco and Hannon in the same sales productivity situation, and Hannon neither violated the "sidelining agreement" nor sold the same products as Velasco, there is no proper comparison between Velasco and Hannon.
 
 
 13
 As Velasco has not established a genuine issue of disparate treatment, the district court's grant of summary judgment must be
 
 
 14
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)