124 F.3d 204
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Lawrence J. OLSON, Plaintiff-Appellant,
v.
HEALTHDYNE MATERNITY MANAGEMENT, Defendant-Appellee.
 No. 97-1047.
 United States Court of Appeals, Seventh Circuit.
 Argued July 8, 1997.
September 2, 1997.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin.
 Before POSNER, Chief Judge CUDAHY, RIPPLE, Circuit Judge.
 
 ORDER
 REYNOLDS
 
 1
 Lawrence Olson appeals the grant of summary judgment in favor of his former employer, Healthdyne Maternity Management, in this gender discrimination action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. We affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 Healthdyne Maternity Management (a subsidiary of Healthdyne, Inc., a company now known as Matria Healthdyne, Inc. as the result of a merger) offers programs to high-risk obstetrical patients. Its operations are organized by regions; Sales Specialists cover specific sales territories within each region. The Sales Specialists promote Healthdyne's services to health care providers, who in turn refer patients to Healthdyne. The health care providers are known as "referral sources."
 
 
 4
 In March 1994, Jeffrey Winter, Midwest Area Vice President, hired Lawrence Olson as a Healthdyne Sales Specialist. Olson, who was placed under the supervision of Winter and Judy Grueber, Midwest Regional Sales Manager, was assigned a largely metropolitan, Milwaukee-based sales territory that Healthdyne had developed. Olson was expected to maintain the approximately fifty referral sources already extant in the territory and develop new business for Healthdyne. Winter also hired a female, Ann Marie Bury, as a Sales Specialist. Bury's sales territory was part of Milwaukee and western Wisconsin.
 
 
 5
 According to Healthdyne, Olson did not meet its performance expectations. Accordingly, his employment was terminated effective September 15, 1995.
 
 
 6
 After exhausting his administrative remedies, Olson filed a gender discrimination suit against Healthdyne, contending that he had been performing better than Bury and that Healthdyne had terminated him because it favored female salespersons. The district court held that Olson had not articulated a prima facie case because he had not shown that he was meeting Healthdyne's legitimate job requirements or that he was treated differently than a similarly situated female, and alternatively that he had not shown Healthdyne's nondiscriminatory reason for firing him was pretextual. Healthdyne's motion for summary judgment was granted, and Olson appeals. We review the district court's grant of summary judgment de novo. Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 346 (7th Cir.1997).
 
 II
 DISCUSSION
 A. Prima Facie Case
 
 7
 Olson argues that he presented a prima facie case of employment discrimination. To establish a prima facie case, Olson must demonstrate by a preponderance of the evidence that (1) he is a member of a protected class, (2) his performance met Healthdyne's legitimate job expectations, (3) he was fired, and (4) a person similarly situated but outside the protected class was treated differently. Plair, 105 F.3d at 347. The record shows, however, that Olson can establish neither the second nor the fourth of these criteria.
 
 
 8
 It is apparent that Olson was not performing up to Healthdyne's standards. Grueber and Winter, who had "co-traveled" with both Olson and Bury to observe their sales techniques and provide feedback, supplied affidavits in support of Healthdyne's motion for summary judgment. Grueber identified several deficiencies in Olson's performance: he had failed to maintain his territory's established referral sources (referrals in his territory had dropped 56 percent during his employment); he had shown little improvement in prioritizing his time, despite repeated reminders and instructions; he had failed to adjust his selling strategy from public relations to a more substantive focus; he had not adequately developed records so that he would be aware of the best times to call on physicians; his product knowledge was substandard; his sales remained below forecast (in Healthdyne's terms, he was below his census); and his paperwork was substandard. Grueber further stated that Bury was assigned a relatively undeveloped territory and had fewer established referral sources; that she was well-organized and planned her time; and that referrals increased in her territory. According to Grueber, Olson received 26 of a possible 80 points on his annual evaluation and consequently was not given an increase in salary, while Bury received 56 points and a merit raise.
 
 
 9
 Similarly, Winter asserted that Olson: had poor planning ability and visited offices when doctors were not scheduled to work; had an inadequate patient census; had problems presenting medical information; had trouble mastering the Healthdyne sales process, which focussed on substantive, in-depth consultations; had difficulty implementing the strategies Winter and Grueber suggested for improving his performance; and had the lowest daily physician call average in the Midwest Region. Winter also stated that Bury's skills were far superior to Olson's; that she followed Winter and Grueber's instructions; that her call average was higher than Olson's; and that referral sources in her territory increased.
 
 
 10
 Olson argues that he was ahead of Bury in both sales points (credited per patient per Healthdyne service provided) and in percentage of goals completed. He further contends that, contrary to the affidavits of Winter and Grueber, he adequately planned his time and was well organized; he was familiar with Healthdyne products; and that the decline in his referrals was due to lack of demand rather than his performance. Olson also asserted that his performance evaluation was affected by Grueber's bias toward women.
 
 
 11
 A plaintiff may create a genuine issue of fact "by specifically refuting facts that allegedly support the employer's claim of performance deficiencies," Dey v. Colt Const. & Dev. Co., 28 F.3d 1446, 1460 (7th Cir.1994). This court, however, gives "little weight to statements by supervisors or co-workers that generally corroborate a plaintiff's own perception of satisfactory job performance." Id. The general assertions of the plaintiff or other employees concerning the plaintiff's abilities, where the affiants are unable to compare the abilities of the plaintiff and employees not terminated, are not sufficient to conclude that an employer has not honestly weighed performance factors. Williams v. Williams Elec., Inc., 856 F.2d 920, 924 (7th Cir.1988); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125 (7th Cir.1994); Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1571 (7th Cir.1989); Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1218, 1223 (7th Cir.1980).
 
 
 12
 In making his arguments Olson fails to address the crux of Healthdyne's concerns--that whatever his performance, it was not up to the level that Healthdyne expected of him. He does not refute Healthdyne's assertions regarding his consistently low census or significant drop in referrals (although he contends that demand was lower, he makes no showing that there were fewer at-risk pregnancies in Milwaukee, and Healthdyne could legitimately expect new business to offset temporary declines in existing business). His statements about his own performance do not sufficiently rebut Grueber and Winter's oft-expressed concerns about his sales techniques, and his assertion that he read Healthdyne materials does not negate Grueber and Winter's beliefs that he lacked necessary knowledge. The fact that doctors wrote letters saying their lack of referrals was not due to Olson's salesmanship (even if the letters were not hearsay) does not create an issue of fact as to whether Olson was meeting Healthdyne's expectations. Even were we to discount Grueber's affidavit because of alleged bias, Olson does not explain why Winter reported the same criticisms of his performance.
 
 
 13
 Further, many of Olson's arguments are based on his own conclusory statements. For example, he asserts that he had more referrals than Bury, even after she was attributed with twenty referrals that should have been credited to him, but he fails to explain which referrals were controversial or why he should have been credited with them. In addition, Olson's affidavit makes many assertions about Bury's skills and her sales territory, but Olson admitted in his deposition that he has no firsthand knowledge of either. Olson would like us to rule based upon his definitions of acceptable performance, but it is the employer, not the court, who defines legitimate job requirements.
 
 
 14
 Olson offers statistics regarding the declining number of male Sales Specialists to show that Healthdyne unreasonably evaluated his performance on subjective criteria and to suggest that Healthdyne has attempted to winnow males from its sales force. These statistics--that 70 percent of Healthdyne's national sales force is female, and that the Midwest Region went from six females and six males to nine females and one male (R. 33 at 7-8)--have no foundation or explanation of how they were derived, a necessary prerequisite to their admissibility, see Sheehan v. Daily Racing Form, Inc., 104 F.3d 940 (7th Cir.1997), petition for cert. filed, 65 U.S.L.W. 3728 (U.S. Apr. 15, 1997) (No. 96-1668). In contrast, Healthdyne rebuts specifically that there were six Sales Specialists in the Midwest Region when Olson was hired. A female left the company, leaving three men and two women. This more explicit evidence does not rate an inference of impermissible winnowing.
 
 
 15
 The district court further concluded that Olson had failed to show that he was treated differently than a similarly situated female because Healthdyne's expectations of Bury were different than its expectations of Olson. Bury was assigned to a less developed territory than Olson and expected to develop new business, while Olson was expected to maintain and increase business in his territory. Thus, Bury was evaluated differently. Olson relies heavily on sales volume without recognizing that Bury was expected to have a lower sales volume.
 
 
 16
 As in Mills v. First Federal Savings & Loan Association of Belvidere, 83 F.3d 833, 843 (7th Cir.1996), Olson's assertions are "insufficient to contradict the detailed evidence of [his employer's] displeasure with [his] performance." From this record it is apparent that Olson has failed to articulate a prima facie case of discrimination because he cannot show that he was meeting his employer's legitimate job expectations and because he cannot point to a similarly situated female from whom he was treated differently.
 
 B. Pretext
 
 17
 Even assuming that Olson established a prima facie case, he cannot show that Healthdyne's legitimate nondiscriminatory reason--his poor job performance--was a pretext for discrimination. "Pretext ... means a lie, specifically a phony reason for some action." Plair, 105 F.3d at 348 (quoting Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir.1995)). To demonstrate pretext, Olson must show that a discriminatory reason more likely motivated Healthdyne or that Healthdyne's proffered explanation is unworthy of credence. La Montagne v. American Convenience Prod., Inc., 750 F.2d 1405, 1414 (7th Cir.1984). To do the latter, Olson may show that Healthdyne's reasons have no basis in fact, or that they did not really motivate his discharge, or that they were insufficient to cause his discharge. Id. at 1414-15.
 
 
 18
 The crucial question is whether Healthdyne honestly believed that Olson's sales performance justified his termination. If Healthdyne genuinely believed its estimates of Olson's ability, summary judgment in its favor would be appropriate even if it were mistaken in its evaluation. A genuine, but mistaken, belief does not constitute pretext. Wolf Buss (America) Inc., 77 F.3d 914, 919 (7th Cir.), cert. denied, 117 S.Ct. 175 (1996); Pollard v. Rea Magnet Wire Co., Inc., 824 F.2d 557, 559 (7th Cir.1987); see also Lenoir v. Roll Coater, Inc., 13 F.3d 1130 (7th Cir.1994). "No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII and § 1981 do not interfere." Pollard, 824 F.2d at 560.
 
 
 19
 Olson offers his own affidavit, as well as letters from several referral sources, that he was a competent salesperson and that his performance was not the reason doctors in his sales territory had ceased referring patients to Healthdyne. "Such evidence, we have explained, does not shed any light on whether the employer honestly based its employment decision on performance-related considerations, which is the focus of our inquiry in these cases." Dey, 28 F.3d at 1460. Here, the doctors' letters do nothing to refute Healthdyne's contention that Olson was simply not bringing in sufficient business: although those doctors said that they had no patients to refer to Healthdyne, the fact remains that Olson had not developed enough business to keep his numbers near Healthdyne's goals. Further, much of the information in Olson's affidavit regarding Bury's performance and Healthdyne's treatment of Bury is based on his own speculations, and "[a] party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture." Palucki, 879 F.2d at 1572.
 
 
 20
 Olson avers that Grueber and Winter were biased in favor of female salespersons and that their evaluations of his performance consequently should be disregarded. "Summary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that may have affected the adverse employment action." Dey, 28 F.2d at 3.459; see Robinson v. PPG Indus., Inc., 23 F.3d 1159, 1165 (7th Cir.1994) (remand where supervisor who allegedly made discriminatory remarks prepared forced ranking and decided to terminate plaintiff). The record does not support Olson's allegation that either Winter or Grueber had the requisite discriminatory animus. Taking the facts in the light most favorable to Olson, the only mention of gender is of a conversation about women being better Healthdyne salespeople because they had more understanding of pregnancy, an insufficient basis to show that Grueber was so biased against male salespersons that she attempted to have them fired. There is nothing in the record to indicate that Winter, a male, was biased against other males. Notably, it was the same person, Winter, who (while aware of Olson's gender) interviewed and hired Olson and later fired him. Although this fact is not dispositive, it tends to indicate non-discrimination. EEOC v. Our Lady of the Resurrection Medical Center, 77 F.3d 145, 152 (7th Cir.1996); Wolf, 77 F.3d at 923-24.
 
 Conclusion
 
 21
 Olson has failed to fulfill the elements of a prima facie gender discrimination case. Even disregarding this failure, he has been unable to show that Healthdyne's legitimate nondiscriminatory reason for terminating his employment was a pretext for discrimination.
 
 
 22
 AFFIRMED.