Eddie McLAURIN, Plaintiff,

v.

## FEDERAL EXPRESS CORPORATION, Defendant.

No. 97 C 8497.

United States District Court, N.D. Illinois, Eastern Division.

May 7, 1999.

Herbert H. Victor, Chicago, IL, for Eddie McLaurin, plaintiff.

Marsha Ann Tolchin, Ungaretti & Harris, Chicago, IL, Pamela D. Pitts, Federal Express Corporation, Memphis, TN, James Riley Mulroy, II, Federal Express Corporation, Memphis, TN, Robbin T. Sarrazin, Federal Express, Legal Department, Memphis, TN, for Federal Express Corporation, defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Eddie McLaurin brought this action against Federal Express Corporation ["Federal Express"] alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Federal Express moves for summary judgment. For the following reasons, the motion for summary judgment is granted.

### Background

Eddie McLaurin was hired by Federal Express in July 1989, and from August 1995 until his termination he held the position of operations manager. Mr. McLaurin worked as the operations manager of the P.M. shift at Federal Express' CGX Station in Chicago [the "station"]. His primary responsibility was for "re-load" at the station. This included making sure that the processing of freight ran smoothly, from unloading freight from pick-up

vehicles, to storing freight at the station, to reloading freight to vehicles that would take it to the airport and to its final destination. James Sims was also an operations manager on the p.m. shift at the station. Mr. Sims' primary responsibility, however, was for the courier workgroup, which picked up freight from drop boxes, businesses, and residences, and dropped off the freight at the station.

On November 7, 1996, between 10:10 p.m and 10:20 p.m., a bag of "Priority 1" ["P–1"] freight was found at the station by a p.m. shift employee. P–1 freight is next-day priority delivery with a delivery commitment of 10:30 a.m.[1] Both parties agree that the P–1 freight needed to be moved to the airport, and Mr. McLaurin states in his deposition that he had three options for getting the P1 freight to the airport. After discussing his options with Mr. Sims, Mr. McLaurin decided to leave the freight at the station overnight and wait for the a.m. shuttle driver. The reasons why Mr. McLaurin made this decision are disputed. It is undisputed, however, that Mr. McLaurin was alerted to the existence of the P–1 freight that evening, that he made the decision to wait for the A.M. shuttle driver to take the freight to the airport, and that freight with a 10:30 a.m. delivery commitment sat in the station overnight.

Federal Express has an Acceptable Conduct Policy [the "conduct policy"] which was applicable to Mr. McLaurin. Under the conduct policy, "[l]eadership failure of a member of management" is a basis for disciplinary action up to and including discharge. (Def.Ex.13). On November 8, 1996, Mr. McLaurin was suspended without pay for investigation of the November 7 incident, for possible violation of the

1. In his deposition, Mr. McLaurin states that Priority 1 freight is next-day priority delivery, and answers affirmatively when asked if that means "by 10:30 the next morning?" (Pl. Dep. at 212). In his response to the 12(M) statement, with no citation to the record, Mr. McLaurin denies that the delivery commitment is 10:30 a.m. In his 12(N) statement, Mr. McLaurin cites to excerpts of a policy describing delivery commitments for two-day service rather than next-day priority delivery. Mr. McLaurin cannot create an issue of fact by denying his own testimony; moreover, he fails to explain the relevance of delivery times for two-day service. Therefore I will consider 10:30 a.m. the delivery commitment for Priority 1 freight.

conduct policy. Mr. McLaurin's supervisor, Donald Mock, investigated the incident. On November 18, 1996, following a review of the investigation, Mr. McLaurin was fired for violation of the conduct policy. The termination letter sent by Federal Express to Mr. McLaurin states:

> As a manager at Federal Express you "MUST" always act in the best interest of the company and it's [sic] customers. Always doing the right thing in the absence of direct direction and or policy. You failed to move freight to the ramp Thursday night expeditiously, this is Leadership Failure. Federal Express can not and will not tolerate this type of Leadership Failure. (November 18, 1996 letter from Donald Mock to Eddie McLaurin).

After challenging his termination through an internal grievance procedure, Mr. McLaurin filed a charge of discrimination with the EEOC, alleging that he was discharged because he is African American. Subsequently Mr. McLaurin brought this lawsuit. Federal Express now moves for summary judgment.

### Summary Judgment

Under Title VII, it is unlawful for an employer to discharge an employee because of the employee's race or color. 42 U.S.C. § 2000e–2(a)(1). Mr. McLaurin has not offered direct evidence that racial discrimination motivated Federal Express' decision to discharge him. Instead, Mr. McLaurin relies on indirect evidence of racial discrimination. To survive a motion for summary judgment, Mr. McLaurin "first must establish a prima facie case of racial discrimination by a preponderance of the evidence." *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997). To establish a prima facie case, Mr. McLaurin must show that 1) he is a member of a protected class; 2) his job performance met Federal Express' legitimate expectations; 3) his employment was terminated; and 4) that another, similarly situated individual not in the protected class was treated more favorably. *Id.*

Federal Express does not dispute that Mr. McLaurin meets the first and third factors. Instead, Federal Express argues that Mr. McLaurin was not meeting legitimate job expectations. Federal Express points to numerous reasons why Mr. McLaurin was not meeting its legitimate expectations. Mr. McLaurin, however, says that he was performing his job well, and that he had received recognition for good performance. Such testimony by Mr. McLaurin concerning the quality of his own work establishes that he was meeting the legitimate expectations of Federal Express for the purposes of his prima facie case. *Williams v. Williams Elecs., Inc.*, 856 F.2d 920, 923 n. 6 (7th Cir.1988).

Federal Express further argues that Mr. McLaurin has not shown that any similarly situated employees were treated less favorably than himself. Mr. McLaurin alleges that two, Caucasian employees are similarly situated: Mr. Sims, an operational manager who was on duty the evening in question; and Mr. Mock, Mr. McLaurin's supervisor. Like Mr. McLaurin, Mr. Sims was an operational manager who worked the p.m. shift at the station. While Mr. McLaurin's primary responsibility involved re-load at the station, however, Mr. Sims' primary responsibility was the courier workgroup, which picked up freight from customers and dropped it off at the station. Thus it was Mr. McLaurin, not Mr. Sims, who was primarily responsible for ensuring that freight dropped off by the courier workgroup was properly unloaded, stored, and reloaded. Therefore Mr. Sims was not similarly situated to Mr. McLaurin. Nonetheless, Mr. Sims had actual knowledge of the P1 freight that sat in the station on the night of November 7, 1996, and he discussed possible options with Mr. McLaurin. Because of his involvement, Mr. Sims was issued a performance reminder which resulted in his termination on November 18, 1996.

Mr. McLaurin also argues that Mr. Mock is a similarly situated employee who was treated more favorably. Mr. Mock, Mr. McLaurin's supervisor, assisted in Mr. McLaurin's duties involving re-load after Mr. McLaurin was suspended. On November 11, 1996, Mr. Mock went home at 9:50 p.m. Some time later, he learned that freight was discovered at the station by other employees. Mr. Mock was not disciplined. If Mr. Mock assumed a significant portion of Mr. McLaurin's former duties, he could be considered a similarly situated employee. *Janiuk v. TCG/Trump Co.*, 157 F.3d 504, 507 n. 3 (7th Cir.1998) There is no evidence, however, that Mr. Mock made any decisions regarding that freight. To the contrary, Mr. McLaurin concedes that he knew about the freight on the night of November 7, 1998 and that he decided to hold the freight for the A.M. shuttle. Although he disagrees that his decision was wrong, or that his decision could have been made differently to reach a better result, he has not pointed to another manager in his position who made the same decision regarding P1 freight sitting overnight who was treated more favorably.

The Seventh Circuit has noted that the prima facie elements are not meant to be applied rigidly. *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 793 (7th Cir.1997). Notwithstanding his inability to show that a similarly situated employee was treated more favorably, Mr. McLaurin could meet his initial burden by showing that the circumstances surrounding his discharge indicate it is more likely than not that his race was the reason for his discharge. *Id.* at 794. In *Leffel*, an ADA case, the court required only that the plaintiff provide "evidence reasonably suggesting that the employer would not have taken adverse action against the plaintiff had she not been disabled and everything else had remained the same." *Id.* In his response to the motion for summary judgment, however, Mr. McLaurin has not pointed to any evidence from which it can be inferred that race was the motivating factor in his discharge. When asked in his deposition for reasons why Mr. Mock terminated him on the basis of race other than the reasons discussed above, Mr. McLaurin responded that another employee told him Mr. Mock was very prejudiced. This is inadmissible hearsay.

Mr. McLaurin does not dispute that it was his decision to leave the P1 freight at the station overnight on the evening in question. Whether firing Mr. McLaurin based on this decision "was right or wrong, fair or unfair, well-considered or precipitous" is irrelevant. *O'Connor v. DePaul Univ.*, 123 F.3d 665, 670 (7th Cir.1997). Therefore Federal Express' motion for summary judgment is granted.

### Conclusion

For the reasons discussed above, Federal Express' motion for summary judgment is granted.