**Deborah L. OLIVA, Plaintiff,**

**v.**

**PRIDE CONTAINER CORPORATION and Display Graphics, LLC, Defendant.**

**No. 98 C 6406.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 26, 2000.

Joseph L. Blewitt, Pomper & Goodman, Chicago, IL, Arthur R. Ehrlich, Goldman & Ehrlich, Chicago, IL, for Plaintiff.

Jeffrey S. Fowler, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

Plaintiff Deborah L. Oliva claims that she was discriminated against and terminated on the basis of her sex and disability

in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 et seq. Defendants move for summary judgment on both counts, which I deny with respect to the Title VII claim and grant with respect to the ADA claim.

I.

Ms. Oliva was hired in November 1996 by Display Graphics LLC ("Display Graphics") as a sales representative. Defendants Display Graphics, LLC and Pride Container Corporation ("Pride Container") are commonly owned and employ sales representatives who are capable of selling both company's products.

On September 30, 1997, Ms. Oliva was injured in a car accident. Although she drove herself back to work that day, Ms. Oliva missed the following week of work. In addition, she continued to suffer from various afflictions as a result of the accident, including temporaomandibular joint syndrome ("TMJ"), a bowel obstruction, and pains in her neck, back and head. Ms. Oliva suffered paralysis over her right eye which eventually required surgery. According to Ms. Oliva, Mr. Abrams, Pride Container's Vice President and Sales Manager responsible for both entities sales representatives, made repeated statements about the frequency of her doctors' appointments.

In 1998, Ms. Oliva's sales goals for the first three sales periods were $90,000, $110,000, and $125,000; her actual sales were $56,000, $72,000, and $25,000 respectively. On May 12, 1998, Pride Container terminated Ms. Oliva, claiming her sales volume was too low. Ms. Oliva now sues her former employer and its affiliate, claiming discrimination because of her sex and disability in violation of the ADA and Title VII.

II.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Lexington Ins. Co. v. Rugg & Knopp, 165 F.3d 1087, 1090 (7th Cir. 1999). When considering a motion for summary judgment, I review the entire record, drawing all reasonable inferences from the record in the light most favorable to the non-moving party. Cornfield by Lewis v. Consolidated High School Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993). The party opposing the motion, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

III.

Ms. Oliva offers no direct evidence of discrimination nor does she bother to clearly articulate the elements of her indirect prima facie case.[1] Nevertheless, I shall proceed based on the facts alleged in her response to summary judgment. Ms. Oliva may establish a prima facie case of discrimination by showing she: (1) belongs to a protected class, (2) performed her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated worse than similarly-situated male employees, Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir.1997). If Ms. Oliva makes out a prima facie case of discrimination, the burden of production shifts to the defendants to articulate a "legitimate, non-discriminatory reason for its action," which Ms. Oliva must then show is pretext to survive summary judgment. Id., 105 F.3d at 347.

Ms. Oliva meets the first, third, and fourth prongs of the prima facie case. She is a woman who was fired while other male

1. Ironically, the only evidence of comments related to gender are offered by defendants in their motion for summary judgment. Not surprisingly, these isolated remarks are insufficient to constitute direct evidence case of discrimination.

employees, performing substantially similar duties, were not fired.[2] Defendants argue that, based on Ms. Oliva's inadequate job performance, she cannot make out a prima facie case of discrimination and even if she could, her unsatisfactory sales constitutes a legitimate, nondiscriminatory reason for her termination. Thus, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same evidence. *See Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996) ("in many employment discrimination cases, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same circumstances because the employer maintains that the discharge was based on its reasonable belief that the employer was not performing in an acceptable manner.") I shall therefore proceed directly to consider whether Ms. Oliva met her burden of showing pretext. *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1404 (7th Cir.1996).

■ Ms. Oliva may prove pretext by showing "evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Testerman v. EDS Technical Prod. Corp.*, 98 F.3d 297, 303 (7th Cir.1996). Defendant claims that it fired Ms. Oliva because she failed to meet her sales goals for 1998.[3] Ms. Oliva concedes the factual accuracy of the defendants' assertion, but attempts to explain away her sales shortfall. She alleges that she was on track to exceed her prior year's sales and that, at the time of her termination, she was working on major accounts which presumably could have permitted her to meet her goals. Howev-

er, the operative time frame for performance is when she was terminated, so her prior or future anticipated performance is irrelevant. Nor are Ms. Oliva's claims that the defendants set her up for failure and termination compelling because (1) she herself set the sales goals, and (2) her allegations of non-support in terms of training, guidance, and leads are contradicted by her own statements in the record that "everyone has been very helpful and responsive to any questions or needs that I have had" and that Mr. Abrams gave her leads, attended three sales calls with her, and warned her about spending too much time in the office rather than out in the field. Moreover, the failure of a sales representative to meet her self-imposed sales forecast appears a legitimate way of determining whether she could perform her job at the level required of sales representatives. Ms. Oliva does not undermine the factual basis or facial sufficiency of the defendants' stated reason for her termination. However, by demonstrating that she was fired while male employees who did not meet their sales goals were not, Ms. Oliva offers evidence that tends to show that her performance may not have been the real reason behind her termination.

Sales reports included in the record by the defendants indicate that many sales representatives did not meet their budgeted sales figures in 1998. These same reports demonstrate that a male sales representative, Bill Restis, like Ms. Oliva, had three straight periods of poor sales but, unlike Ms. Oliva, was not terminated. The defendants claim that his projects showed significant promise and he was working in new territory. However, during the first

**2.** Defendant defines "similarly-situated" too narrowly, merging the fourth prong into its right to show Ms. Oliva was not performing her job satisfactorily and that there were legitimate, nondiscriminatory reasons for her termination. Ms. Oliva need only show that men responsible for the same duties as herself were not fired, and she has done so by pointing to Bill Restis, among others.

**3.** The defendant does not help its case by stating that Ms. Oliva did not organize any golf outings, basketball games, or other traditionally male-dominated sporting events for clients; Ms. Oliva was to sell boxes and point-of-purchase display products, not sporting equipment.

three sales periods of 1998, Mr. Restis not only failed to meet his budgeted sales, his sales were minuscule and only a fraction of even Ms. Oliva's, so it is difficult to imagine what promise or progress management foresaw. Ms. Oliva was also working in what was new territory for her, having recently relocated to Chicago. While Ms. Oliva was fired for her sales shortfall, Mr. Restis' salary was cut, but he was retained and did not resign until nearly eight months later. The defendants then attempt to equate the treatment of Ms. Oliva and Mr. Restis by comparing their overall length of employment, since Mr. Restis resigned approximately one year and a half after he began his employment while Ms. Oliva was fired after a similar time period. However, it is not clear why Mr. Restis resigned—the defendants intimate he was asked to but are coyly unclear on this point—nor does it matter. There is a clear difference in consequence and stigma between being fired and resigning from a position, and it is disingenuous for the defendant to suggest otherwise, particularly since Ms. Oliva was not given the option of resigning but was instead unceremoniously fired.

"The factfinder's rejection of the defendants' nondiscriminatory explanation of the facts comprising a prima facie case may itself be enough to find for the plaintiff on the issue of liability." *Wichmann v. Board of Trustees of Southern Illinois Univ.*, 180 F.3d 791, 803 (7th Cir.1999) (*citing St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Here, the evidence tendered shows that there were other male sales representatives who did not meet their sales goals, but were not fired, so a jury could reasonably reject this as the real reason Ms. Oliva was fired. Because the defendants rest their entire argument for summary judgment on its nondiscriminatory explanation of the facts, that Ms. Oliva was fired because she did not meet her sales goals, her successful rebuttal of this argument could persuade a rational trier of fact that this reason is pretextual

and that could be enough for that trier of fact to find the defendant liable for sex discrimination. *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742. I must therefore deny the defendants' motion for summary judgment on this claim.

## IV.

Ms. Oliva claims that her employer fired her because of and reasonably failed to accommodate her disability. The ADA prohibits employer discrimination against an employee on the basis of a disability, including both discriminatory discharge and the failure to provide reasonable accommodation. 42 U.S.C. § 12112(a), (b)(5)(A). A claim for failure to accommodate is separate and distinct under the ADA from one of disparate treatment because of a disability, *see Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021–22 (7th Cir.1997), but under either theory, the ADA proscribes discrimination against only a "qualified individual with a disability." *Id.* at 1022. Therefore, in order to protest such activity, Ms. Oliva must first meet the definition of a qualified individual with a disability.

Ms. Oliva claims that she is disabled due to injuries sustained in a car accident. The ADA defines the term "disability" to mean a physical or mental impairment that substantially limits one or more of the major life activities of such individual. 42 U.S.C. § 12102(2)(A). Major life activities are basic life functions, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Knapp v. Northwestern Univ.*, 101 F.3d 473, 479 (7th Cir.1996). Ms. Oliva alleges that due to her TMJ, herniated cervical disc, paralysis, surgical scar, and colon problems, she is substantially limited in her ability to walk, talk, sit, stand, chew and drive. She offers no medical records, but the defendants do not dispute her medical condition. In addition, Ms. Oliva's alleged disability is supported by her

statements included in her application for Social Security disability benefits that she was not supposed to operate a car so could not go out in the sales field driving and had to limit time on the phone with customers. According to Ms. Oliva, her application for Social Security disability benefits was denied because, although Social Security determined she was precluded from performing her current position, she could perform other jobs. However, a Social Security determination that one is not disabled is not dispositive and does not estop a plaintiff from claiming disability under the ADA. *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). Ms. Oliva has therefore created a genuine factual issue as to whether she was substantially limited with respect to certain major life activities.

To qualify for protection under the ADA, Ms. Oliva must also show that with or without reasonable accommodation, she can perform the essential functions of her position, 42 U.S.C. §§ 12112(a), 12111(8), a determination made as of the time of the employment decision. *Ross v. Indiana State Teacher's Ass'n Ins. Trust,* 159 F.3d 1001, 1013 (7th Cir.1998) ("plaintiff bears the burden of establishing that he is a 'qualified individual with a disability'"), cert. denied, 525 U.S. 1177, 119 S.Ct. 1113, 143 L.Ed.2d 109 (1999). In short, Ms. Oliva must show that, when she was terminated, she could perform her job.

The defendants claim that the essential functions of a sales representative are speaking and driving. Sales representatives must make sales calls either in person or on the phone, both of which necessitate a good deal of speaking and some driving. Although Ms. Oliva claims she can do these things, to qualify as disabled under the ADA and in her application for Social Security benefits, she claimed she was "substantially limited" in these activities by her disability. Ms. Oliva falls into this catch–22 situation faced by ADA plaintiffs, i.e. the difficult task of proving that they are sufficiently impaired to be considered disabled yet still able to perform the essential duties of the job. Here, if Ms. Oliva is substantially limited in the tasks of driving and talking, she cannot do her job; if she instead claims she is only minimally limited in these tasks, she is not disabled. Under either situation, she is not a "qualified individual with a disability" entitled to ADA protection unless she can demonstrate a reasonable accommodation which will permit her to perform her position, which she fails to do.

The only accommodations Ms. Oliva claims should have been available are a decreased work load or work schedule. However, Ms. Oliva does not explain which tasks could have been farmed out to other employees or how this could be accomplished so that she could still perform her job. The option of taking time off or limiting her hours or activities is seemingly what she was doing before she was terminated, and the result appeared to be that she could not adequately perform her job by meeting her sales goals. Visiting and talking to clients and potential clients is an integral part of her job, and she fails to show how she could have successfully performed her job by limiting either of these tasks. The only accommodation seemingly available would have been for the defendants to offer her an entirely different position. However, Ms. Oliva has not met her burden of showing that a vacant position existed for which was qualified. *See McCreary v. Libbey–Owens–Ford Co.,* 132 F.3d 1159 (7th Cir.1997).

 While it might seem reprehensible for an employer to fire an employee who is recovering from the continuing effects of a serious car crash, that employee is not protected by the ADA unless she can show that she is a "qualified individual with a disability," which Ms. Oliva cannot do.

The defendants' motion for summary judgment is DENIED with respect to Ms.

Oliva's Title VII claim but GRANTED with respect to her ADA claim.