NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

GATX LOGISTICS, INC., Respondent.

No. 97–2783.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1998.

Decided Sept. 4, 1998.*

Published Oct. 30, 1998.

---

* This decision was originally issued as an unpublished order. The National Labor Relations Board subsequently filed a motion requesting publication pursuant to CIRCUIT RULE 53(d)(3). The panel has granted that motion, and accordingly its decision is now being re-issued as a published opinion.

James M. Walters (argued), Fisher & Phillips, Atlanta, GA, for Respondent.

Before COFFEY, MANION and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This case comes before us on the National Labor Relations Board's application for enforcement of an unfair labor practice order that the Board issued against GATX Logistics, Inc. For the reasons that follow, we grant the Board's application for enforcement.

## I.

In July 1994, GATX, a nationwide logistics company, hired David Landstrom as a contract driver for its warehouse facility in Normal, Illinois. Early the following October, GATX hired Landstrom as a full-time employee, on probationary status for the first ninety days of his employment. Landstrom primarily worked as a "hot parts" driver at GATX, delivering time critical components to the nearby Mitsubishi Motors plant.

At some time in October, GATX manager John Nabakowski learned that in September, Landstrom had been using a restricted-access company telephone during working hours to make personal long-distance calls to his home. By its own account, GATX decided at that time to fire Landstrom. The company said nothing at all to Landstrom, however, opting to keep him in the dark until a replacement driver was hired. In the meantime, an oblivious Landstrom was permitted to continue making long-distance calls on the company telephone. Finally, on November 22, Landstrom was summoned to Nabakowski's office and told that his services were no longer required. When Landstrom asked why the company was letting him go, Nabakowski at first said that he did not owe Landstrom an explanation, but eventually he cited the unauthorized telephone calls as the reason. Landstrom offered to pay for the calls, but Nabakowski told him that the decision to fire him had been made by Mike Millet, another manager. Landstrom later

Christopher W. Young (argued), John D. Burgoyne, National Labor Relations Board, Washington, DC; Glenn A. Zipp, National Labor Relations Board, Peoria, IL, for Petitioner.

spoke with Millet, who attributed the discharge to the telephone calls, Landstrom's "attitude," and the inquiries Landstrom had made about late paychecks and the possibility of retroactive compensation for the lower hourly wage he had earned as a contract driver for GATX.

GATX terminated Landstrom one day after his replacement, Gilbert Karnes, reported for work at the Normal facility and—coincidentally, the company maintains—three days after Landstrom engaged in protected union-related activity at the Normal warehouse. Landstrom had arrived for work on November 19 wearing a jacket which on its back bore a large logo of the International Association of Machinists and Aerospace Workers and on its front a small logo of the Machinists Union Local 852 together with Landstrom's name. Landstrom subsequently ran into a group of warehouse employees that included Nelson ("Hodgie") Teichmann, an assistant manager overseeing the "flow through" of inbound and outbound freight. According to Landstrom, Teichmann looked at the logo on the front of Landstrom's jacket and remarked, "That won't go over too well here." Tr. 60. Landstrom proceeded to hand a "Union Yes" bumper sticker to two of his fellow drivers, one of whom accepted it with the observation that "it might come in handy...." *Id.* When Landstrom turned to leave, Teichmann (again, by Landstrom's account) told him, "That's an awfully big target you have on your back." *Id.* A short time later, Teichmann had a conversation with truck driver Richard Schlosser, who had witnessed this exchange. Schlosser testified that he thought Teichmann looked upset, and when he asked Teichmann what was wrong, Teichmann mentioned Landstrom's jacket and the bumper stickers and indicated "there was no way, no damn way that there was going to be a [u]nion" at GATX and he would "see to that." Tr. 111–112. When Nabakowski fired Landstrom three days later, Teichmann was present in Nabakowski's office.

Landstrom filed a charge with the NLRB asserting that he had been the victim of unfair labor practices, and after conducting an investigation the General Counsel filed a complaint on his behalf with the Board. Ad-ministrative Law Judge George Aleman conducted an evidentiary hearing and issued a decision concluding that GATX had indeed engaged in unfair labor practices. The ALJ credited Landstrom's testimony vis à vis Teichmann's remarks about the union insignia on Landstrom's jacket and found that those remarks amounted to threats of unspecified reprisal. To that extent, GATX "ha[d] interfered with, restrained, and coerced Landstrom in the exercise of the rights guaranteed him by Section 7 of the [National Labor Relations] Act, and ha[d] engaged in an unfair labor practice within the meaning of Section 8(a)(1) and Section 2(6) and (7) of the Act." *GATX Logistics, Inc.*, 323 NLRB No. 46, 1997 WL 148697, at *14 (NLRB March 28). The ALJ found further that GATX had fired Landstrom because it believed he was engaging in union activities, and GATX had thus engaged in unfair labor practices proscribed by section 8(a)(1) and (3) as well as section 2(6) and (7) of the Act. *Id.*, 1997 WL 148697 at *14. Among other remedies, the ALJ ordered GATX to reinstate Landstrom to his former position or one that was substantially equivalent.

The Board subsequently overruled GATX's exceptions to the ALJ's decision and affirmed his findings, making only minor (and for our purposes immaterial) modifications to the relief ordered. 323 NLRB. No. 46, 1997 WL 148697, at *1–*2.

## II.

At the outset, GATX argues that the Board has misallocated the burden of proof in unlawful discharge cases. The Board outlined the analytical framework for such cases in *Wright Line, a Div. of Wright Line, Inc.*, 251 NLRB 1083, 1980 WL 12312 (1980), *enf'd*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982):

[W]e shall henceforth employ the following causation test in all cases alleging violation of Section 8(a)(3) or violations of Section 8(a)(1) turning on employer motivation. First, we shall require that the General Counsel make a *prima facie* showing sufficient to support the inference that protect-

ed conduct was a "motivating factor" in the employer's decision. Once this is established, the burden will shift to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct.

*Id.* at 1089 (footnote omitted). The ALJ applied this framework here. 323 NLRB No. 46, 1997 WL 148697, at *8. GATX concedes that it is appropriate to shift the burden of persuasion to the employer once the General Counsel has proven, by a *preponderance of the evidence*, that the employee's union activities contributed to the discharge decision. But as the company reads *Wright Line*, the Board purports to relieve the General Counsel of that initial burden of persuasion, and instead requires the General Counsel to adduce only so much evidence as will support an *inference* that the discharge decision was motivated by anti-union sentiment. Such a minimal showing, GATX reasons, is not sufficient to saddle the employer with the burden of persuading the factfinder that the discharge was inevitable for reasons wholly independent of the employee's union-related conduct.[1]

■ Both *Wright Line* and the Supreme Court cases endorsing its framework, however, make clear that the General Counsel in fact does bear the threshold burden of persuading the factfinder that the employee's union activities contributed to the discharge decision. *Wright Line* itself notes that "this shifting of burdens does not undermine the established concept that the General Counsel must establish an unfair labor practice by a preponderance of the evidence." 251 NLRB at 1088 n. 11. And in sustaining the *Wright Line* framework, the Supreme Court has repeatedly explained that the General Counsel must persuade the factfinder that the employee's protected activity motivated the discharge decision at least in part. In *NLRB v.*

*Transportation Management Corp.*, 462 U.S. 393, 400, 103 S.Ct. 2469, 2473, 76 L.Ed.2d 667 (1983), the Court described *Wright Line* as holding that "the General Counsel of course had the burden of *proving* that the employee's [protected] conduct . . . was a substantial or motivating factor in the discharge." (Emphasis supplied; footnote omitted.) *See also id.* at 395, 103 S.Ct. at 2471 (the Board in *Wright Line* "determined that the General Counsel carried the burden of *persuading* the Board that an antiunion animus contributed to the employer's decision to discharge an employee . . . .") (emphasis supplied). The Court went on to note that "[t]he Board has not purported to shift the burden of persuasion on the question of whether the employer fired [the employee] at least in part because he engaged in protected activities." *Id.* at 400 n. 5, 103 S.Ct. at 2473 n. 5; *see also id.* at 401, 103 S.Ct. at 2474 ("The Court of Appeals was quite correct, and the Board does not disagree, that throughout the proceedings, the General Counsel carries the burden of proving the elements of an unfair labor practice."). Several years later, when the Court had occasion to disavow certain language in *Transportation Management* concerning section 7(c) of the NLRA, the Court reaffirmed the holding of that case, explaining:

> The NLRB's approach in *Transportation Management* is consistent with § 7(c) because the NLRB first required the employee to *persuade* it that antiunion sentiment contributed to the employer's decision. Only then did the NLRB place the burden of persuasion on the employer as to its affirmative defense.

*Director, Office of Workers' Compensation Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 278, 114 S.Ct. 2251, 2258, 129 L.Ed.2d 221 (1994) (emphasis supplied).[2]

---

1. The company suggests that if the General Counsel's initial obligation is limited to presenting a "prima facie case" that merely raises an "inference" that the discharge violated the statute, then we should be looking not to the dual-motive framework that *Wright Line* derived from *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), but the alternate burden-shifting

framework espoused by *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

2. *Wright Line's* reference to " a *prima facie* showing sufficient to support the *inference* that protected conduct was a 'motivating factor' in the employer's decision," 251 N.L.R.B. at 1089 (emphasis supplied), may have been intended simply

We do not believe that the Board's opinion in this case relieved the General Counsel of the burden of persuasion. Notwithstanding the Board's reference to the *Wright Line* language regarding evidence "sufficient to support the inference" that antiunion animus contributed to the discharge decision (323 N.L.R.B. No. 46, 1997 WL 148697, at *8); we have no reason to believe that the Board labored under any misapprehension that the General Counsel was not obligated to carry the burden of persuasion on this point. On the contrary, when the opinion is read as a whole, there can be no doubt that the Board was persuaded that Landstrom's union-related conduct was a motivating factor in GATX's decision to fire him. The Board, in fact, characterized the General Counsel's showing in this respect as "strong." *Id.*, 1997 WL 148697, at *9; *contrast NLRB v. CWI of Maryland, Inc.*, 127 F.3d 319, 331 (4th Cir.1997) (where the evidence was described as "relatively weak"). The only question remaining, then, is whether the Board's finding has the support of "substantial evidence." *E.g., Uniroyal Technology Corp. v. NLRB*, 151 F.3d 666, 670 (7th Cir.1998); *NLRB v. Joy Recovery Technology Corp.*, 134 F.3d 1307, 1312 (7th Cir.1998). Having reviewed the record, we believe that it does.

GATX poses a variety of objections to the manner in which the Board evaluated the evidence before it, contending broadly that the Board violated its duty to consider all of the evidence in the record by making conclusions that purportedly lack support in the record. It notes, for example, that the ALJ in certain instances chose not to credit certain testimony that the company offered even in the absence of other evidence controverting that testimony. In other instances, the company complains, the ALJ relied on evidence for propositions wholly separate from the purposes for which that evidence was offered. We need not undertake an exhaustive recitation of these objections nor respond to each in detail. We have carefully reviewed the record in light of GATX's arguments and have found no error that would cast doubt upon the Board's factual determinations.

Finally, we reject the notion that the Board improperly substituted its own business judgment for that of GATX in discrediting the non-discriminatory rationale that the company offered for Landstrom's discharge. We have observed on many occasions that courts do not sit as "super-personnel departments" charged with deciding whether an employer's decisions were "right" or "wrong"; our sole mission, in the typical discrimination case, is to decide whether the employee was discharged (or subjected to other adverse action) on the basis of criteria that Congress has deemed impermissible. *E.g., Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 678 (7th Cir.1997); *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 846 (7th Cir.1996); *see also C.E. Natco/C–E Invalco*, 272 N.L.R.B. 502, 506, 1984 WL 36870 (1984), *supplemented*, 282 NLRB 314 (1986). We believe that the Board's analysis is consistent with that principle. It is true that in deciding whether GATX would have discharged Landstrom even if he had not engaged in union activity, the Board concluded that the company's conduct was inconsistent with the legitimate reason it cited for Landstrom's discharge— Landstrom's unauthorized long-distance telephone calls. Among other things, the Board noted that there was no evidence of a written rule against making such calls, that by Nabakowski's admission, only "excessive" calls were investigated, and that even after Landstrom's unauthorized use of the company telephone was discovered, he was permitted

as a measure of the quantum of evidence that the General Counsel must present at the hearing before the ALJ in order to survive the equivalent of a motion for judgment as a matter of law, and thus to require the employer to put on a case. Typically, such motions are resolved without regard to the weight of the evidence. *See, e.g., Lebow v. American Trans Air, Inc.*, 86 F.3d 661, 664 (7th Cir.1996); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 515 (7th Cir.1993). Whether the General Counsel has carried the burden of *persuasion* is necessarily a question addressed to the weight of the evidence, however, and for that reason it is one that will usually be addressed at the conclusion of the hearing. Indeed, Board precedent indicates that the answer to this question must be based on the record as a whole, including whatever evidence the employer has presented. *See NLRB v. CWI of Maryland, Inc.*, 127 F.3d 319, 332 n. 8 (4th Cir.1997).

to continue making these calls until he was discharged. 323 N.L.R.B. No. 46, 1997 WL 148697, at \*10, \*11, \*12. The Board was not speaking prescriptively, however. To the extent that the Board assessed the reasonableness of GATX's conduct, it did so only in weighing the credibility of the company's own explanation for Landstrom's discharge. We see nothing improper in the Board's assessment. On the contrary, the Supreme Court's own opinion in *Transportation Management* embraces consideration of the same types of factors cited by the Board in this case. 462 U.S. at 404–05, 103 S.Ct. at 2475–76 (noting, inter alia, that employer had never expressed disapproval of employee's conduct prior to his discharge).

### III.

Finding GATX's objections to be without merit, we GRANT the Board's application and ENFORCE its order.